(Slip Opinion)          OCTOBER TERM, 2008          1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## KANSAS *v.* VENTRIS

### CERTIORARI TO THE SUPREME COURT OF KANSAS

No. 07–1356.   Argued January 21, 2009—Decided April 29, 2009

Respondent Donnie Ray Ventris and Rhonda Theel were charged with murder and other crimes. Prior to trial, an informant planted in Ventris's cell heard him admit to shooting and robbing the victim, but Ventris testified at trial that Theel committed the crimes. When the State sought to call the informant to testify to his contradictory statement, Ventris objected. The State conceded that Ventris's Sixth Amendment right to counsel had likely been violated, but argued that the statement was admissible for impeachment purposes. The trial court allowed the testimony. The jury convicted Ventris of aggravated burglary and aggravated robbery. Reversing, the Kansas Supreme Court held that the informant's statements were not admissible for any reason, including impeachment.

*Held:* Ventris's statement to the informant, concededly elicited in violation of the Sixth Amendment, was admissible to impeach his inconsistent testimony at trial. Pp. 3–7.

   (a) Whether a confession that was not admissible in the prosecution's case in chief nonetheless can be admitted for impeachment purposes depends on the nature of the constitutional guarantee violated. The Fifth Amendment guarantee against compelled self-incrimination is violated by introducing a coerced confession at trial, whether by way of impeachment or otherwise. *New Jersey* v. *Portash*, 440 U. S. 450, 458–459. But for the Fourth Amendment guarantee against unreasonable searches or seizures, where exclusion comes by way of deterrent sanction rather than to avoid violation of the substantive guarantee, admissibility is determined by an exclusionary-rule balancing test. See *Walder* v. *United States*, 347 U. S. 62, 65. The same is true for violations of the Fifth and Sixth Amendment prophylactic rules forbidding certain pretrial police conduct. See, *e.g., Harris* v. *New York*, 401 U. S. 222, 225–226. The core

of the Sixth Amendment right to counsel is a trial right, but the right covers pretrial interrogations to ensure that police manipulation does not deprive the defendant of " 'effective representation by counsel at the only stage when legal aid and advice would help him.' " *Massiah* v. *United States*, 377 U. S. 201, 204. This right to be free of uncounseled interrogation is infringed at the time of the interrogation, not when it is admitted into evidence. It is that deprivation that demands the remedy of exclusion from the prosecution's case in chief. Pp. 3–6.

   (b) The interests safeguarded by excluding tainted evidence for impeachment purposes are "outweighed by the need to prevent perjury and to assure the integrity of the trial process." *Stone* v. *Powell*, 428 U. S. 465, 488. Once the defendant testifies inconsistently, denying the prosecution "the traditional truth-testing devices of the adversary process," *Harris, supra*, at 225, is a high price to pay for vindicating the right to counsel at the prior stage. On the other hand, preventing impeachment use of statements taken in violation of *Massiah* would add little appreciable deterrence for officers, who have an incentive to comply with the Constitution, since statements lawfully obtained can be used for all purposes, not simply impeachment. In every other context, this Court has held that tainted evidence is admissible for impeachment. See, *e.g., Oregon* v. *Hass*, 420 U. S. 714, 723. No distinction here alters that balance. Pp. 6–7.

285 Kan. 595, 176 P. 3d 920, reversed and remanded.

   SCALIA, J., delivered the opinion of the Court, in which ROBERTS, C. J., and KENNEDY, SOUTER, THOMAS, BREYER, and ALITO, JJ., joined. STEVENS, J., filed a dissenting opinion, in which GINSBURG, J., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 07–1356

KANSAS, PETITIONER *v.* DONNIE RAY VENTRIS

ON WRIT OF CERTIORARI TO THE SUPREME COURT OF KANSAS

[April 29, 2009]

JUSTICE SCALIA delivered the opinion of the Court.

We address in this case the question whether a defendant's incriminating statement to a jailhouse informant, concededly elicited in violation of Sixth Amendment strictures, is admissible at trial to impeach the defendant's conflicting statement.

I

In the early hours of January 7, 2004, after two days of no sleep and some drug use, Rhonda Theel and respondent Donnie Ray Ventris reached an ill-conceived agreement to confront Ernest Hicks in his home. The couple testified that the aim of the visit was simply to investigate rumors that Hicks abused children, but the couple may have been inspired by the potential for financial gain: Theel had recently learned that Hicks carried large amounts of cash.

The encounter did not end well. One or both of the pair shot and killed Hicks with shots from a .38-caliber revolver, and the companions drove off in Hicks's truck with approximately $300 of his money and his cell phone. On receiving a tip from two friends of the couple who had helped transport them to Hicks's home, officers arrested Ventris and Theel and charged them with various crimes,

chief among them murder and aggravated robbery. The State dropped the murder charge against Theel in exchange for her guilty plea to the robbery charge and her testimony identifying Ventris as the shooter.

Prior to trial, officers planted an informant in Ventris's holding cell, instructing him to "keep [his] ear open and listen" for incriminating statements. App. 146. According to the informant, in response to his statement that Ventris appeared to have "something more serious weighing in on his mind," Ventris divulged that "[h]e'd shot this man in his head and in his chest" and taken "his keys, his wallet, about $350.00, and . . . a vehicle." *Id.,* at 154, 150.

At trial, Ventris took the stand and blamed the robbery and shooting entirely on Theel. The government sought to call the informant, to testify to Ventris's prior contradictory statement; Ventris objected. The State conceded that there was "probably a violation" of Ventris's Sixth Amendment right to counsel but nonetheless argued that the statement was admissible for impeachment purposes because the violation "doesn't give the Defendant . . . a license to just get on the stand and lie." *Id.,* at 143. The trial court agreed and allowed the informant's testimony, but instructed the jury to "consider with caution" all testimony given in exchange for benefits from the State. *Id.,* at 30. The jury ultimately acquitted Ventris of felony murder and misdemeanor theft but returned a guilty verdict on the aggravated burglary and aggravated robbery counts.

The Kansas Supreme Court reversed the conviction, holding that "[o]nce a criminal prosecution has commenced, the defendant's statements made to an undercover informant surreptitiously acting as an agent for the State are not admissible at trial for any reason, including the impeachment of the defendant's testimony." 285 Kan. 595, 606, 176 P. 3d 920, 928 (2008). Chief Justice McFarland dissented, *id.,* at 611, 176 P. 3d, at 930. We

granted the State's petition for certiorari, 554 U. S. \_\_\_ (2008).

## II

The Sixth Amendment, applied to the States through the Fourteenth Amendment, guarantees that "[i]n all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his defence." The core of this right has historically been, and remains today, "the opportunity for a defendant to consult with an attorney and to have him investigate the case and prepare a defense for trial." *Michigan* v. *Harvey*, 494 U. S. 344, 348 (1990). We have held, however, that the right extends to having counsel present at various pretrial "critical" interactions between the defendant and the State, *United States* v. *Wade*, 388 U. S. 218, 224 (1967), including the deliberate elicitation by law enforcement officers (and their agents) of statements pertaining to the charge, *Massiah* v. *United States*, 377 U. S. 201, 206 (1964). The State has conceded throughout these proceedings that Ventris's confession was taken in violation of *Massiah*'s dictates and was therefore not admissible in the prosecution's case in chief. Without affirming that this concession was necessary, see *Kuhlmann* v. *Wilson*, 477 U. S. 436, 459–460 (1986), we accept it as the law of the case. The only question we answer today is whether the State must bear the additional consequence of inability to counter Ventris's contradictory testimony by placing the informant on the stand.

## A

Whether otherwise excluded evidence can be admitted for purposes of impeachment depends upon the nature of the constitutional guarantee that is violated. Sometimes that explicitly mandates exclusion from trial, and sometimes it does not. The Fifth Amendment guarantees that no person shall be compelled to give evidence against himself, and so is violated whenever a truly coerced con-

fession is introduced at trial, whether by way of impeachment or otherwise. *New Jersey* v. *Portash*, 440 U. S. 450, 458–459 (1979). The Fourth Amendment, on the other hand, guarantees that no person shall be subjected to unreasonable searches or seizures, and says nothing about excluding their fruits from evidence; exclusion comes by way of deterrent sanction rather than to avoid violation of the substantive guarantee. Inadmissibility has not been automatic, therefore, but we have instead applied an exclusionary-rule balancing test. See *Walder* v. *United States*, 347 U. S. 62, 65 (1954). The same is true for violations of the Fifth and Sixth Amendment prophylactic rules forbidding certain pretrial police conduct. See *Harris* v. *New York*, 401 U. S. 222, 225–226 (1971); *Harvey, supra*, at 348–350.

Respondent argues that the Sixth Amendment's right to counsel is a "right an accused is to enjoy a[t] trial." Brief for Respondent 11. The core of the right to counsel is indeed a trial right, ensuring that the prosecution's case is subjected to "the crucible of meaningful adversarial testing." *United States* v. *Cronic*, 466 U. S. 648, 656 (1984). See also *Powell* v. *Alabama*, 287 U. S. 45, 57–58 (1932). But our opinions under the Sixth Amendment, as under the Fifth, have held that the right covers pretrial interrogations to ensure that police manipulation does not render counsel entirely impotent—depriving the defendant of "'effective representation by counsel at the only stage when legal aid and advice would help him.'" *Massiah, supra,* at 204 (quoting *Spano* v. *New York*, 360 U. S. 315, 326 (1959) (Douglas, J., concurring)). See also *Miranda* v. *Arizona*, 384 U. S. 436, 468–469 (1966).

Our opinion in *Massiah*, to be sure, was equivocal on what precisely constituted the violation. It quoted various authorities indicating that the violation occurred at the moment of the postindictment interrogation because such questioning "'contravenes the basic dictates of fairness in

the conduct of criminal causes.'"  377 U. S., at 205 (quoting *People* v. *Waterman*, 9 N. Y. 2d 561, 565, 175 N. E. 2d 445, 448 (1961)).  But the opinion later suggested that the violation occurred only when the improperly obtained evidence was "used against [the defendant] at his trial." 377 U. S., at 206–207.  That question was irrelevant to the decision in *Massiah* in any event.  Now that we are confronted with the question, we conclude that the *Massiah* right is a right to be free of uncounseled interrogation, and is infringed at the time of the interrogation.  That, we think, is when the "Assistance of Counsel" is denied.

It is illogical to say that the right is not violated until trial counsel's task of opposing conviction has been undermined by the statement's admission into evidence.  A defendant is not denied counsel merely because the prosecution has been permitted to introduce evidence of guilt— even evidence so overwhelming that the attorney's job of gaining an acquittal is rendered impossible.  In such circumstances the accused continues to enjoy the assistance of counsel; the assistance is simply not worth much. The assistance of counsel has been denied, however, at the prior critical stage which produced the inculpatory evidence.  Our cases acknowledge that reality in holding that the stringency of the warnings necessary for a waiver of the assistance of counsel varies according to "the usefulness of counsel to the accused at the particular [pretrial] proceeding."  *Patterson* v. *Illinois*, 487 U. S. 285, 298 (1988).  It is *that* deprivation which demands a remedy.

The United States insists that "post-charge deliberate elicitation of statements without the defendant's counsel or a valid waiver of counsel is not intrinsically unlawful." Brief for United States as *Amicus Curiae* 17, n. 4.  That is true when the questioning is unrelated to charged crimes—the Sixth Amendment right is "offense specific," *McNeil* v. *Wisconsin*, 501 U. S. 171, 175 (1991).  We have never said, however, that officers may badger counseled

defendants about charged crimes so long as they do not use information they gain. The constitutional violation occurs when the uncounseled interrogation is conducted.

B

This case does not involve, therefore, the prevention of a constitutional violation, but rather the scope of the remedy for a violation that has already occurred. Our precedents make clear that the game of excluding tainted evidence for impeachment purposes is not worth the candle. The interests safeguarded by such exclusion are "outweighed by the need to prevent perjury and to assure the integrity of the trial process." *Stone* v. *Powell*, 428 U. S. 465, 488 (1976). "It is one thing to say that the Government cannot make an affirmative use of evidence unlawfully obtained. It is quite another to say that the defendant can . . . provide himself with a shield against contradiction of his untruths." *Walder, supra*, at 65. Once the defendant testifies in a way that contradicts prior statements, denying the prosecution use of "the traditional truth-testing devices of the adversary process," *Harris, supra*, at 225, is a high price to pay for vindication of the right to counsel at the prior stage.

On the other side of the scale, preventing impeachment use of statements taken in violation of *Massiah* would add little appreciable deterrence. Officers have significant incentive to ensure that they and their informants comply with the Constitution's demands, since statements lawfully obtained can be used for all purposes rather than simply for impeachment. And the *ex ante* probability that evidence gained in violation of *Massiah* would be of use for impeachment is exceedingly small. An investigator would have to anticipate both that the defendant would choose to testify at trial (an unusual occurrence to begin with) *and* that he would testify inconsistently despite the admissibility of his prior statement for impeachment. Not likely to

happen—or at least not likely enough to risk squandering the opportunity of using a properly obtained statement for the prosecution's case in chief.

In any event, even if "the officer may be said to have little to lose and perhaps something to gain by way of possibly uncovering impeachment material," we have multiple times rejected the argument that this "speculative possibility" can trump the costs of allowing perjurious statements to go unchallenged. *Oregon* v. *Hass*, 420 U. S. 714, 723 (1975). We have held in every other context that tainted evidence—evidence whose very introduction does not constitute the constitutional violation, but whose obtaining was constitutionally invalid—is admissible for impeachment. See *ibid.; Walder*, 347 U. S., at 65; *Harris*, 401 U. S., at 226; *Harvey*, 494 U. S., at 348. We see no distinction that would alter the balance here.*

\*          \*          \*

We hold that the informant's testimony, concededly elicited in violation of the Sixth Amendment, was admissible to challenge Ventris's inconsistent testimony at trial. The judgment of the Kansas Supreme Court is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

——————

*Respondent's *amicus* insists that jailhouse snitches are so inherently unreliable that this Court should craft a broader exclusionary rule for uncorroborated statements obtained by that means. Brief for National Association of Criminal Defense Lawyers 25–26. Our legal system, however, is built on the premise that it is the province of the jury to weigh the credibility of competing witnesses, and we have long purported to avoid "establish[ing] this Court as a rule-making organ for the promulgation of state rules of criminal procedure." *Spencer* v. *Texas*, 385 U. S. 554, 564 (1967). It would be especially inappropriate to fabricate such a rule in this case, where it appears the jury took to heart the trial judge's cautionary instruction on the unreliability of rewarded informant testimony by acquitting Ventris of felony murder.

# SUPREME COURT OF THE UNITED STATES

_____

No. 07–1356

_____

## KANSAS, PETITIONER *v.* DONNIE RAY VENTRIS

ON WRIT OF CERTIORARI TO THE SUPREME COURT OF KANSAS

[April 29, 2009]

JUSTICE STEVENS, with whom JUSTICE GINSBURG joins, dissenting.

In *Michigan* v. *Harvey*, 494 U. S. 344 (1990), the Court held that a statement obtained from a defendant in violation of the Sixth Amendment could be used to impeach his testimony at trial. As I explained in a dissent joined by three other Members of the Court, that holding eroded the principle that "those who are entrusted with the power of government have the same duty to respect and obey the law as the ordinary citizen." *Id.,* at 369. It was my view then, as it is now, that "the Sixth Amendment is violated when the fruits of the State's impermissible encounter with the represented defendant are used for impeachment just as it is when the fruits are used in the prosecutor's case in chief." *Id.*, at 355.

In this case, the State has conceded that it violated the Sixth Amendment as interpreted in *Massiah* v. *United States*, 377 U. S. 201, 206 (1964), when it used a jailhouse informant to elicit a statement from the defendant. No *Miranda* warnings were given to the defendant,[1] nor was he otherwise alerted to the fact that he was speaking to a state agent. Even though the jury apparently did not credit the informant's testimony, the Kansas Supreme Court correctly concluded that the prosecution should not

_____

[1] See *Miranda* v. *Arizona*, 384 U. S. 436 (1966).

be allowed to exploit its pretrial constitutional violation during the trial itself.   The Kansas Court's judgment should be affirmed.

This Court's contrary holding relies on the view that a defendant's pretrial right to counsel is merely "prophylactic" in nature.   See *ante*, at 4.   The majority argues that any violation of this prophylactic right occurs solely at the time the State subjects a counseled defendant to an uncounseled interrogation, not when the fruits of the encounter are used against the defendant at trial.   *Ante*, at 5. This reasoning is deeply flawed.

The pretrial right to counsel is not ancillary to, or of lesser importance than, the right to rely on counsel at trial.   The Sixth Amendment grants the right to counsel "[i]n all criminal prosecutions," and we have long recognized that the right applies in periods before trial commences, see *United States* v. *Wade*, 388 U. S. 218, 224 (1967).   We have never endorsed the notion that the pretrial right to counsel stands at the periphery of the Sixth Amendment.   To the contrary, we have explained that the pretrial period is "perhaps the most critical period of the proceedings" during which a defendant "requires the guiding hand of counsel."   *Powell* v. *Alabama*, 287 U. S. 45, 57, 69 (1932); see *Maine* v. *Moulton*, 474 U. S. 159, 176 (1985) (recognizing the defendant's "right to rely on counsel as a 'medium' between him and the State" in all critical stages of prosecution).   Placing the prophylactic label on a core Sixth Amendment right mischaracterizes the sweep of the constitutional guarantee.

Treating the State's actions in this case as a violation of a prophylactic right, the Court concludes that introducing the illegally obtained evidence at trial does not itself violate the Constitution.   I strongly disagree.   While the constitutional breach began at the time of interrogation, the State's use of that evidence at trial compounded the violation.   The logic that compels the exclusion of the

evidence during the State's case in chief extends to any attempt by the State to rely on the evidence, even for impeachment. The use of ill-gotten evidence during any phase of criminal prosecution does damage to the adversarial process—the fairness of which the Sixth Amendment was designed to protect. See *Strickland* v. *Washington*, 466 U. S. 668, 685 (1984); see also *Adams* v. *United States ex rel. McCann*, 317 U. S. 269, 276 (1942) ("[The] procedural devices rooted in experience were written into the Bill of Rights not as abstract rubrics in an elegant code but in order to assure fairness and justice before any person could be deprived of 'life, liberty, or property'").

When counsel is excluded from a critical pretrial interaction between the defendant and the State, she may be unable to effectively counter the potentially devastating, and potentially false,[2] evidence subsequently introduced at trial. Inexplicably, today's Court refuses to recognize that this is a constitutional harm.[3] Yet in *Massiah*, the Court forcefully explained that a defendant is "denied the basic protections of the [Sixth Amendment] guarantee when there [is] used against him at his trial evidence of his own incriminating words" that were "deliberately elicited from

―――――――――

[2] The likelihood that evidence gathered by self-interested jailhouse informants may be false cannot be ignored. See generally Brief for National Association of Criminal Defense Lawyers as *Amicus Curiae*. Indeed, by deciding to acquit respondent of felony murder, the jury seems to have dismissed the informant's trial testimony as unreliable.

[3] In the majority's telling, "simply" having counsel whose help is "not worth much" is not a Sixth Amendment concern. *Ante*, at 5. Of course, the Court points to no precedent for this stingy view of the Counsel Clause, for we have never held that the Sixth Amendment only protects a defendant from actual denials of counsel. Indeed our venerable ineffective-assistance-of-counsel jurisprudence is built on a more realistic understanding of what the Constitution guarantees. See *Strickland* v. *Washington*, 466 U. S. 668 (1984); *McMann* v. *Richardson*, 397 U. S. 759, 771, n. 14 (1970) ("[T]he right to counsel is the right to the effective assistance of counsel").

him after he had been indicted and in the absence of counsel." 377 U. S., at 206. Sadly, the majority has retreated from this robust understanding of the right to counsel.

Today's decision is lamentable not only because of its flawed underpinnings, but also because it is another occasion in which the Court has privileged the prosecution at the expense of the Constitution. Permitting the State to cut corners in criminal proceedings taxes the legitimacy of the entire criminal process. "The State's interest in truth-seeking is congruent with the defendant's interest in representation by counsel, for it is an elementary premise of our system of criminal justice 'that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free.'" *Harvey*, 494 U. S., at 357 (STEVENS, J., dissenting) (quoting *United States* v. *Cronic*, 466 U. S. 648, 655 (1984)). Although the Court may not be concerned with the use of ill-gotten evidence in derogation of the right to counsel, I remain convinced that such shabby tactics are intolerable in all cases. I respectfully dissent.