FILED
United States Court of Appeals
Tenth Circuit

December 10, 2010

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff-Appellee, | No. 10-6179 |
| v. | (W.D. of Okla.) |
| THOMAS HAROLD DELANA, JR., | (D.C. No. 07-CV-00582-M and 5:03-CR-00006-M-8) |
| Defendant-Appellant. | |

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]

Before **HARTZ, ANDERSON**, and **TYMKOVICH**, Circuit Judges.[**]

Thomas Harold Delana, Jr. seeks a certificate of appealability (COA) to enable him to appeal the district court's denial of his 28 U.S.C. § 2255 application to vacate, set aside, or correct his sentence. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253(a), and we construe Delana's filings liberally because he is proceeding pro se. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 & n.3 (10th Cir. 1991). Nonetheless, no reasonable jurist could conclude the district

---

[*] This order is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G). The cause is therefore ordered submitted without oral argument.

court's denial was incorrect. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Accordingly, we DENY the application for a COA and DISMISS the appeal.

## I. Background

In 2003, a grand jury in the Western District of Oklahoma returned an indictment charging Delana and eight others with drug and firearm offenses. The indictment specifically charged Delana with four counts relating to the manufacture and distribution of methamphetamine and one count of being a felon in possession of a firearm. Delana was tried, and a jury found him guilty on each of the five counts. After reviewing a pre-sentence investigation report and conducting a sentencing hearing, the district court sentenced him to life imprisonment, 30 years' imprisonment, and 15 years' imprisonment, all to run concurrently.

In 2007, Delana filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence, claiming the government presented false and misleading testimony and his trial counsel was constitutionally ineffective. Delana contends the government presented false and misleading testimony regarding the meaning of the term "One Percent Club" and the date on which his wife began cooperating with the government. He claims his trial counsel was ineffective in responding to this evidence and for failing to investigate calling Virgil Earl Nelson, Delana's codefendant, as a defense witness. The district court denied Delana's motion after determining an evidentiary hearing was unnecessary.

-2-

## II. Discussion

"We review the district court's legal rulings on a § 2255 motion de novo and its findings of fact for clear error." *United States v. Orange*, 447 F.3d 792, 796 (10th Cir. 2006). To obtain a COA, Delana must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). He may make this showing "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). "[A] claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that [the] petitioner will not prevail." *Id.* at 338.

### A. Ineffective Assistance of Trial Counsel

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. CONST. amend. VI; *Kansas v. Ventris*, 129 S. Ct. 1841 (2009). A defendant who claims ineffective assistance of counsel must show that "counsel's representation fell below an objective standard of reasonableness," and that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

*1. Potential Use of Virgil Earl Nelson as a Witness*

First, Delana contends his counsel provided ineffective assistance by failing to investigate calling Nelson, a member of the Outlaw Motorcycle Club (OMC) and a codefendant, as a defense witness. If called at trial, Delana claims Nelson would have testified (1) Delana was not associated with the OMC; (2) prior to his arrest, Nelson had never met, seen, or heard of Delana; (3) Delana could not have been involved in a methamphetamine conspiracy with the OMC "because the OMC is a legitimate motorcyclist association only capable of involving itself in motorcycling activities;" and (4) the terms "outlaws" and "one-percenters" signified being outside the supervision of the American Motorcyclist Association (AMA), not being involved in criminal enterprises. R., Vol. 1 at 89–90.

We agree with the district court that Delana's counsel was not ineffective for failing to investigate calling Nelson as a witness. As the district court noted, Nelson is a multiply convicted felon who pleaded guilty to the same large-scale conspiracy to produce and distribute methamphetamine that gave rise to Delana's conviction. Because Nelson's testimony would have little to no credibility at trial, the decision not to call him as a witness does not fall below an objective standard of reasonableness. Furthermore, the jury's verdict was unlikely to be affected by Nelson's testimony, since the government presented overwhelming evidence of Delana's possession of firearms and involvement in methamphetamine production and distribution.

In his request for a COA, Delana contends the fact that Nelson received a lesser sentence than he did suggests a jury would have found Nelson's testimony to be credible. But it is unclear how a sentence of 20 years' imprisonment would mitigate the damage to credibility caused by the conviction itself. Furthermore, the fact that Nelson did not receive a life sentence does not, in itself, make his testimony more credible.

In sum, the decision not to investigate calling Nelson as a witness does not constitute ineffective assistance of counsel because Nelson's testimony had little credibility and would not have overcome the substantial evidence incriminating Delana.

2. *Testimony Regarding the Term "One Percent Club"*

Second, Delana contends his counsel was ineffective for failing to challenge allegedly false and misleading testimony regarding the meaning of the term "One Percent Club." At trial, a government witness testified, "[a] one-percenter is usually considered the one person out of a hundred people that does not wish to conform to the laws of the Government, or, you know, to society." R., Vol. 1 at 78. Another government witness testified that a one-percent patch on a motorcycle jacket signified "criminal power," similar to a patch connoting support for the Mexican mafia. *Id*. at 78–79.

Delana contends One Percent Club does not indicate criminal propensity, but merely an unwillingness to associate with the AMA or conform to its

standards of social interaction at motorcycling events. He supports this contention by submitting a page from the OMC's website, an article published in the *Austin Chronicle*, and an affidavit by Nelson. Delana also avers contrary evidence on the meaning of One Percent Club would have proven the government's witnesses were testifying falsely, which would have affected the trial's outcome.

In its denial of Delana's motion, the district court held Delana failed to demonstrate a reasonable probability that, but for counsel's failure to challenge the testimony regarding the meaning of this term, the outcome of the proceedings would have been different. We agree.

As an initial matter, it is unclear a jury would see serious inconsistencies between the witnesses' testimony and the documents submitted by Delana. Even if admissible, the *Austin Chronicle* article claims One Percent Club originated in a fourth of July weekend brawl between members of competing motorcycle clubs. It also notes the term "one-percenter" is intended to indicate a contrast with mainstream cyclists who are "law-abiding citizens." *Id.* at 93. Finally, it provides examples of "murderous violence" perpetrated by one-percenters. *Id.* Thus, the article is not inconsistent with the testimony that a one-percenter is a person who does not want to conform to society's rules or laws.

Second, there is little indication the conduct of Delana's counsel fell below an objective standard of reasonableness. As the district court noted, the

testimony regarding the meaning of One Percent Club did not incriminate Delana. In fact, the government has never claimed Delana is a one-percenter. Challenging the witnesses' testimony by drawing subtle distinctions on the term's origins would not have exculpated Delana, but would have only drawn attention to the so-called "outlaw" status of the OMC. Similarly, there is little indication that challenging the testimony would have affected the jury's verdict in light of the evidence incriminating Delana, including the tape recording of a methamphetamine transaction in which he participated.

In sum, the decision not to challenge the government witnesses' descriptions of the meaning of One Percent Club does not constitute ineffective assistance of counsel because doing so would not have exculpated Delana, much less overcome the substantial evidence incriminating him.

3. *Tracey Delana's Testimony Regarding Her Cooperation*

Finally, Delana contends his counsel was ineffective for failing to challenge false and misleading testimony by his wife, Tracey Delana, regarding the date on which she began cooperating with the government. Delana bases his appeal on the following exchange between the prosecution and Ms. Delana:

> Q.    Also, when did you first agree to cooperate with the government?
>
> A.    I agreed to cooperate the day I signed my Rule 11.
>
> Q.    Do you remember when that was?

        A.      No, I don't.  It was in March of last year [2003].

*Id.* at 82.

        Delana claims his wife lied about the length of her cooperation.  To support

his claim, he submits a document created by an ATF special agent in the context

of the OMC investigation.  The document indicates Ms. Delana was a confidential

informant who received fourteen payments for "subsistence," totaling $640,

between January 3, 2002 and February 6, 2003.  Delana also notes that, during

closing arguments, the government alluded to Ms. Delana's testimony regarding a

methamphetamine transaction involving Delana by stating, "[k]eep in mind that

Tracey Delana was no government informant at the time she was there."  *Id.* at

83.

        Delana avers his counsel's failure to challenge his wife's testimony

constitutes a breakdown of the adversarial system.  But due process is not

violated simply because every possible avenue of impeachment is not exhausted.

As the district court noted, Ms. Delana had already entered a guilty plea and

admitted to participating in the same methamphetamine conspiracy for which

Delana was facing trial.  She also admitted to being a heavy user of

methamphetamine for extended periods of time.  Therefore, the impeachment

value of challenging the date on which she first began cooperating is minor

compared with the impeachment value of her criminal conduct, which was

thoroughly explored at trial.  And as with his other claims, Delana fails to

demonstrate how impeaching his wife on the length of her cooperation would have affected the outcome of the proceedings, especially in light of the substantial amount of evidence that otherwise corroborated her testimony.

In sum, the decision not to challenge Tracey Delana's testimony regarding when she began cooperating with the government does not constitute ineffective assistance of counsel.

**B.  Presentation of False and Misleading Evidence by the Government**

We review Delana's claim of prosecutorial misconduct under the standard set forth in *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974).  *See Matthews v. Workman*, 577 F.3d 1175, 1186 (10th Cir. 2009).  In *Donnelly*, the Supreme Court held prosecutorial misconduct in a state court violates a defendant's right to a fair trial only if the prosecutor's actions "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Donnelly*, 416 U.S. at 643.

Viewing Delana's contention in light of this standard, we cannot conclude the prosecution's alleged misconduct denied him a fair trial.  As already noted, any false or misleading testimony or argument regarding the meaning of One Percent Club or the length of Tracey's cooperation would not have affected the trial's outcome in light of the overwhelming evidence incriminating Delana.

Therefore, even if the government's actions constituted prosecutorial misconduct—and we do not conclude here they did—it was not so egregious that it rendered the entire trial fundamentally unfair.

## III. CONCLUSION

For the reasons stated above, we **DENY** Delana's request for a COA, **DENY** his motion to proceed *in forma pauperis*, and **DISMISS** his appeal.

Entered for the Court


Timothy M. Tymkovich
Circuit Judge