COOKS, J.,
dissenting.
hi respectfully dissent from the majority opinion’s affirmance of Defendant’s conviction. While I am reluctant at any time to set aside a jury’s verdict, I find the trial court abused its discretion in failing to give the required appropriate great caution instruction, which may have precluded the jury from reaching a verdict based on the law and facts. Therefore, I would vacate the jury’s verdict and remand the matter to the trial court for a new trial.
Defendant maintains here, as he did at trial, that Michael Hayes is a liar who received numerous benefits in exchange for testifying for the State. As the majority opinion notes, the evidence is clear that there was no DNA evidence tying Defendant to the murders. Thus, the jury could only have found Defendant guilty by accepting as true the testimony of Michael Hayes. I find merit in Defendant’s assignment of error that the trial court erred in overruling his request for a great caution jury instruction relating to the “snitch testimony” of Michael Hayes. Had the jury been properly cautioned as to the longstanding rule that accomplice and snitch testimony is inherently unreliable and still chose to accept as true the testimony of Michael Hayes, the jury’s decision to believe Michael Hayes could suffice to support Defendant’s conviction. However, for the reasons that follow I find the jury was not properly instructed as to the great caution it must use when weighing snitch testimony.
12As the majority noted, Defendant’s appellate counsel assigned as error the trial court’s decision to overrule his request for a “great caution” jury instruction regarding the snitch testimony of Michael Hayes. Defendant filed a “Motion for Special Jury Instructions Regarding Snitch Testimony.”
*506 The proposed jury instruction reads as follows:
An ineentivized witness is defined as one who may be eligible for some benefit as a result of his assistance in the investigation or prosecution of another person. Whether the witness was involved in the offense for which the defendant is charged or not, corroboration is desirable, but it is not always indispensable. The jury may convict on his uncorroborated testimony. And while it is not the rule of law, it is rather the rule of our experience in dealing with that class of testimony that while you may convict upon the uncorroborated testimony of an ineentivized witness, still you should act upon his testimony with great caution, subject to careful examination of the weight of the other evidence in this case. And you are not to convict upon such testimony alone unless satisfied, after a great careful examination of its truth, that you feel you can safely rely on it. What the law means by corroboration of the testimony of an ineentivized witness is not merely the corroboration of the witnesses narrative and the mere details of how the crime was committed, but some real and independent corroboration tending to implicate the defendant in the commission of the offense charged. It is not sufficient to corroborate an ineentivized witness as to the facts of the case. Generally, he should be corroborated as to some material fact which tends to prove that the accused was connected with the crime that’s charged. In determining the reliability of the testimony of an ineentivized witness you should take into account several factors indicating the extent to which his testimony is credible, including: 1) explicit or implied inducements that the witness received, may receive, or will receive; 2) the prior criminal history of the witness; 3) evidence that the witness is a “career informant” who has testified in other criminal cases; and 4) any other factors that might tend to render the witness’ testimony unreliable.
The trial court refused to give that charge and instead gave the following charge to the jury:
As jurors you alone determine the weight and credibility of the evidence. As the sole judges of the credibility of witnesses and of the weight of their testimony deserves, you should scrutinize carefully the testimony and circumstances under which the witness has testified. In evaluating the testimony of a witness, you may consider his ability and opportunity to observe and remember the matter about which he testified, his manner while testifying, any reason he may have for testifying in favor of or against the State or the defendant, and the | ¡¡extent to which the testimony is supported or contradicted by the evidence.
The testimony of a witness may be discredited by showing that the witness will benefit in some way by the defendant’s conviction or acquittal, that the witness is prejudiced, or that the witness has any other reasons or motive for not telling the truth.
Instructing a jury to consider the reasons and motives a witness may have for testifying, is a far cry from instructing the jury as to the inherent unreliability of snitch testimony. A review of the trial court’s instruction clearly shows it comes well short of instructing the jury that it must use great caution when weighing the credibility of snitch testimony. Thus, the issue becomes whether the trial court abused its discretion in failing to give the great caution instruction requested by Defendant.
*507 As the majority set forth, the court in State v. Divers, 38,524, p. 13 (La.App. 2 Cir. 11/23/04), 889 So.2d 335, 352, writ denied, 04-3186 (La. 4/8/05), 899 So.2d 2, cert. denied, 546 U.S. 939, 126 S.Ct. 431, 163 L.Ed.2d 327 (2005), found “ ‘great caution’ instructions are required when a case involves uncorroborated accomplice testimony.” This caution is required because snitch testimony is inherently untrustworthy. Kansas v. Ventris, 556 U.S. 586, 594, 129 S.Ct. 1841, 173 L.Ed.2d 801 (2009).
I find in the present case, given the fact the State’s case hinged almost entirely on the testimony of Michael Hayes, the jurisprudence requires there to be material corroboration. A review of the record shows there was little, if any, corroboration of the material points of Hayes’ testimony.
The State argues the fact Hayes’ knew about the wire found around one of the victim’s neck, corroborates his testimony. I do not agree. Although the lead investigator testified the information regarding the wire was withheld from the public, there was significant testimony elicited at trial suggesting the presence of the wire was common knowledge in the community. Chief Credeur testified that although they were instructed not to say anything about the wire, everyone at the 14scene knew that something was wrapped around Ms. Matte’s neck. When asked if the wire around Ms. Matte’s neck was common knowledge in the Branch community, Chief Credeur replied, “Probably so.” Detective Phyllis LeJeune acknowledged she could not keep the information about the wire from getting out but believed the information did not get out since there were not many people at the scene when the wire was discovered. However, Detective Le-Jeune did state when she questioned Jeremy Matte, he knew about the wire. Detective LeJeune did not know how Jeremy found out about the wire. Jeremy testified he heard a rumor that a cord was found around Ms. Matte’s neck. It is apparent from the record that the information concerning the wire or cord found around Angela Matte’s neck was likely known by the public. Therefore, Hayes’ inclusion of this particular fact does little to corroborate his overall testimony.
Hayes also testified that Defendant said he stole $2,500.00 in cash from the women. However, Cordtney Otten testified it was unlikely that either of the victims would be in possession of that amount of money. One victim worked as a waitress, and the other victim also did restaurant work. The State presented no evidence that either victim possessed such an amount of money. The State also offered no evidence that Defendant was seen with a large sum of money in the days following the fire. The record is devoid of any trial evidence corroborating the testimony that Defendant said he stole $2,500.00 in cash from the victims.
The State acknowledges the lynchpin of its case is the testimony of Michael Hayes. There are only two other points, independent of Hayes’ testimony, that the State used to build its case against Defendant: 1) He was one of several men at the bar where the two victims were last seen alive; and 2) he was stopped driving a truck that generally resembled one seen near the fire.
Although phone records placed Defendant in the area of the bar, he had admitted he was present in the bar that evening. Charmaine Billings, the owner of | ¡¡the Little Easy Bar, testified there were about twenty-five to thirty people in the bar that evening. Ms. Billings remembered escorting the victims out of the bar at closing time. Kami Richard, a barmaid at the Little Easy, testified on the evening in question she remembered seeing one of the *508 women trying to flirt with a guy having tattoos and wearing a leather jacket. According to Ms. Richard, the guy did not seem interested in the woman. Ms. Richard testified the guy left before the women left, which was the same as in her previous statement. Ms. Richard thought the women left with another guy.
Defendant did admit to stealing a silver truck from another area and driving it. Cordtney Otten testified during the early morning hours on the date in question, she saw a silver truck proceeding behind the victim’s vehicle. She also stated, hours later, after waking up to use the bathroom, she saw a silver truck driving quickly out of the victim’s driveway. Alluding to the “fortuitous” circumstances that allowed Ms. Otten to see, several hours apart, the silver truck both coming and going, Defendant points out Ms. Otten is related to Jason Fruge, who was considered a suspect in the murders. Detective LeJeune testified Jason Fruge was Ms. Otten’s half-brothef. Defendant also notes Ms. Otten’s description of the truck was erroneous on several key factors. She stated in her statement to police the truck had a tool box in its bed and had tinted windows. Defendant also notes during her testimony Ms. Otten stated she did not see a tool box in the back of the truck that morning, until she was confronted with her earlier statement in which she stated she did see a tool box in the truck. The silver truck Defendant was stopped in weeks later did not have a tool box nor tinted windows. These discrepancies, plus the fact she was related to another suspect in the murders, mitigates against any material corroboration with Michael Hayes’ testimony.
I find the lack of material corroboration, combined with other factors, required the trial court to give a great caution instruction. The fact there was no Indirect evidence linking Defendant to the murders, combined with the reality that there was a plausible alternative suspect in the murders along with evidence that Michael Hayes received numerous benefits for his cooperation, necessitated the special “snitch” instruction.
Dr. Foster, an expert in Corrections and Sentencing, testified that “after [Hayes] became a snitch he went back to Sabine [Corrections Center] and the two (2) sentences were rolled back into one (1) eight (8) year concurrent sentence.” Dr, Foster concluded “[a]ll of the good things that happened to him after he came forward as a snitch, in my opinion, the combination of occurrences was very unusual; like, you know, like he had a guardian angel over his shoulder watching his progress through the system.”
There was testimony from two witnesses that Jason Fruge threatened to set fire to Angela Matte’s trailer. There was also testimony Mr. Fruge was one of the first people seen at the scene of the fire. Authorities also testified he was a suspect in these murders and was also a suspect in other incidents of arson in the area.
While the jury was given a general charge relating to the credibility of witnesses, it was not given the requested special charge on the inherent unreliability of snitch testimony. Given the lack of material corroboration of Michael Hayes’ testimony as set forth above, along with the lack of direct evidence tying Defendant to the murders, as well as the expert testimony noting the significant benefits Mr. Hayes received in exchange for his testimony, I feel it was an abuse of the trial court’s discretion to not caution the jury as requested by Defendant. Accordingly, I would vacate the jury’s verdict and judgments of the lower court, and remand the matter for a new trial.