**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0487-15T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

MYRNA DIAZ,

    Defendant-Appellant.

_____

Submitted September 28, 2017 — Decided October 30, 2017

Before Judges Simonelli and Haas.

On appeal from the Superior Court of New
Jersey, Law Division, Essex County, Indictment
No. 07-08-3025.

Joseph E. Krakora, Public Defender, attorney
for appellant (Steven E. Braun, Designated
Counsel, on the brief).

Robert D. Laurino, Acting Essex County
Prosecutor, attorney for respondent (Tiffany
M. Russo, Special Deputy Attorney
General/Acting Assistant Prosecutor,
of counsel and on the brief).

PER CURIAM

    Defendant Myrna Diaz appeals from the August 21, 2015 Law

Division order, which denied her motion for a new trial and

petition for post-conviction relief (PCR). On appeal, defendant

raises the following contentions:

POINT I: THE PCR COURT SHOULD HAVE GRANTED A NEW TRIAL BECAUSE OF THE STATE'S DISCOVERY VIOLATION.

POINT II: THE [DEFENDANT] WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, PARAGRAPH 10 OF THE NEW JERSEY CONSTITUTION.

A. Interview with Assistant Prosecutor Khan.

B. Counsel's failure to demand a hearing regarding the Marshell Milliner statement and to locate and present Ms. Milliner as a witness.

C. Conclusion regarding the ineffective assistance of [trial counsel].

POINT III: [DEFENDANT] WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AS A RESULT OF THE INCOMPETENT EFFORTS OF THE ATTORNEYS OF THE "PROJECT FREEDOM FUND (PFF)" WHO INDUCED HER TO WITHDRAW HER PLEA OF GUILTY, THEREBY FORFEITING HER PLEA BARGAIN WHICH HAD ENSURED HER A MAXIMUM [FIFTEEN-]YEAR SENTENCE, AND RESULTING IN A JURY TRIAL WHERE SHE WAS CONVICTED AND SENTENCED TO A TERM OF [FORTY] YEARS.

POINT IV: [DEFENDANT'S] APPELLATE COUNSEL PROVIDED INEFFECTIVE ASSISTANCE

2

OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, PARAGRAPH 10 OF THE NEW JERSEY CONSTITUTION.

POINT V: CUMULATIVE ERROR REQUIRED A NEW TRIAL.

POINT VI: THIS COURT SHOULD CONSIDER ALL OTHER POINTS WHICH [DEFENDANT] CONSIDERS TO BE RELEVANT TO THE INSTANT APPEAL.

We reject these contentions and affirm.

A grand jury indicted defendant for felony murder, N.J.S.A. 2C:11-3(a)(3) (count one); first-degree robbery, N.J.S.A. 2C:15-1 (count three); two counts of fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d) (counts four and six); two counts of third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d) (counts five and seven); second-degree burglary, N.J.S.A. 2C:18-2 (count eight); second-degree conspiracy to commit robbery, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:15-1 (count nine); and fourth-degree credit card theft, N.J.S.A. 2C:21-6(c) (count ten). Co-defendants Mark Warner and McDonald Williams were separately charged in count two with felony murder, N.J.S.A. 2C:11-3(a)(1) and (2).

The charges against defendant stemmed from her involvement in the robbery and murder of Jose Cabrera at his auto repair shop in Newark on Sunday, October 8, 2006. Cabrera kept two cell

phones with him at all times, but they were not found on the premises after the robbery/homicide.  A police investigation revealed that after Cabrera's death, one of his cell phones was used to call Warner and his credit card was used at three local stores and a gas station.  A surveillance video from a Stop & Shop showed defendant with Warner bagging groceries and Warner swiping Cabrera's credit card at the register.

In a recorded statement to the police, defendant denied having any knowledge about what had happened to Cabrera or using Cabrera's credit card at the Stop & Shop after his death.  In a second recorded statement, she admitted Cabrera was her former boyfriend and she was at his shop.  After she left the shop, she saw Warner and Williams at the corner and they stopped to ask her about the shop.  She knew both men and had been sexually intimate with Williams for two to three weeks.  She said Williams refused to let her leave and forced her to go to Cabrera's shop.  Warner entered the shop and punched Cabrera in the face.  Warner and Williams wanted Cabrera to open the safe, but he refused.  The men then punched Cabrera, hit him with a long metal piece, and said they would slit her throat if he did not open the safe.  Williams continued hitting Cabrera as Warner took her to the garage and held a knife to her throat.  When Williams exited the shop, his boots were bloody.  As she left, she saw Cabrera lying on the

4

floor in a pool of blood. She admitted Cabrera's credit cards were taken and that she used one of the cards with Warner to purchase food at the Stop & Shop.

Warner's girlfriend, Marshell Milliner, gave a recorded statement to the police, which the State claimed was inadvertently destroyed. However, the State provided a police report indicating that Milliner said defendant and Williams came together to her apartment with credit cards and cell phones, which they removed from a bag. The report also indicated Milliner said the group then went to the Stop & Shop and later returned to her apartment and smoked marijuana.

On September 30, 2008, defendant pled guilty to count one, amended to first-degree aggravated manslaughter, N.J.S.A. 2C:11-4, and count three, first-degree robbery, and agreed to testify truthfully against her co-defendants. In exchange, the State agreed to recommend a term of imprisonment not to exceed fifteen years with an eighty-five percent period of parole ineligibility pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. In her factual basis, defendant admitted that she went with Warner and Williams to Cabrera's shop on October 8, 2006 to commit a robbery; the two men assaulted Cabrera in an attempt to get him to open his safe; she knew it was foreseeable that they could use force in committing the robbery; they did not care if Cabrera

lived or died while they were hitting him; and Cabrera died as a result of his injuries. Defendant also admitted that Warner and Williams took some items from Cabrera during the robbery, and she received Cabrera's credit after the robbery and used it once.

Prior to sentencing, in January 2009, Assistant Prosecutor Naazneen Khan interviewed defendant regarding her claims about a correction officer's sexual harassment and official misconduct. Trial counsel declined to be present at the interview because it did not concern the robbery/homicide. During the interview, defendant began discussing the robbery/homicide, despite being advised she did not have to do so. Defendant told Kahn that she drove Warner and Williams to Cabrera's shop and knew that a robbery was going to take place, but stayed in the car during the entire incident. She denied knowing the men intended to harm Cabrera.

Over a year later, and against trial counsel's advice, on February 5, 2010, defendant filed a pro se motion to withdraw her guilty plea. Defendant also sought to relieve trial counsel from representing her. Defendant certified she was innocent; was with a female friend at the time of the crimes; was coerced and threatened into pleading guilty; and her two statements to the police and factual basis at the plea hearing were false. With the State's consent, the court granted the motion and assigned defendant new counsel.

Prior to trial, new trial counsel moved to suppress defendant's two statements to the police and her statements to Kahn. Following a Miranda[1] hearing, the trial judge ruled the two statements to the police were admissible. The judge also ruled defendant's statements to Kahn were inadmissible on the State's case-in-chief, but the State could use the statement on rebuttal if defendant testified.

Defendant testified on her own behalf. She proclaimed her innocence and testified that she was with Milliner in Milliner's apartment when robbery/homicide occurred, and first saw Warner and Williams when they arrived at the apartment with a shopping cart filled with a number of items, including Cabrera's credit cards. She did not know how Warner and Williams obtained the credit cards, but admitted she twice used the card because they threatened her and her children.

Defendant also testified she was high on drugs and confused about her Miranda rights when she gave her statements to the police and only gave the statements because she wanted to leave. She maintained she was not present when Cabrera was beaten and murdered and did not tell Williams and Warner that he had a safe. She also

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

testified that Milliner was involved with the credit cards as well.

On cross-examination, defendant admitted she met Warner and Williams three weeks prior to the robbery/homicide, was intimate with Williams at the time of the crimes, and was previously intimate with Cabrera and knew he had a safe in his shop. She also admitted that Cabrera closed his shop on Sundays, but she arranged for him to have the shop open so he could look over her nephew's truck. She also was able to describe a knife and grease-pump found at the scene in specific detail. On rebuttal, Kahn testified about defendant's statements during the January 2009 interview.

The jury found defendant guilty of all charges. The trial judge imposed an aggregate forty-year term of imprisonment subject to NERA. Defendant appealed her conviction and sentence. We affirmed, and our Supreme Court denied certification. State v. Diaz, No. A-4378-10 (App. Div. Nov. 18, 2013), certif. denied, 218 N.J. 275 (2014).

Defendant later discovered that Milliner's recorded statement was not destroyed. She filed a motion for a new trial, arguing

the State committed discovery and <u>Brady</u>[2] violations when it failed to produce Milliner's recorded statement. She maintained her innocence and reiterated she was with Milliner at the time of the robbery/homicide. Defendant argued that Milliner's statement was newly-discovered exculpatory evidence that would have changed the outcome of the trial.

Defendant also filed a PCR petition, again raising the State's discovery violation, and also arguing that trial counsel rendered ineffective assistance by failing to be present during the Kahn interview, demand a hearing regarding the State's discovery violation, and locate and call Milliner as an alibi witness at trial. Defendant also argued she was deprived of her Sixth Amendment[3] right to counsel when Project Freedom Fund, "a phony nonprofit organization[,]" advised her to retract her guilty plea. She further argued that appellate counsel rendered ineffective assistance by failing to raise on appeal the State's use of her statements to Kahn on rebuttal.

In a comprehensive August 19, 2015 written opinion, Judge Martin Cronin denied defendant's motion for a new trial. The judge found the State provided the police report, which gave the

---

[2] <u>Brady v. Maryland</u>, 373 <u>U.S.</u> 83, 83 <u>S. Ct.</u> 1194, 10 <u>L. Ed.</u> 2d 215 (1963).

[3] <u>U.S. Const.</u> amend VI.

substance of Milliner's recorded statement, and the report revealed Milliner possessed information that undermined the alibi theory defendant articulated at trial.

After reviewing the transcript of Milliner's recorded statement, Judge Cronin determined it was not exculpatory, but rather, inculpatory. Milliner said she was home alone on the day of the robbery/homicide and first saw defendant when defendant entered her apartment that evening with Williams, jointly possessing money, cell phones, and several credit cards. The judge found that since the robbery/homicide occurred earlier that day, Milliner's statement undermined defendant's trial testimony that she was with Milliner at the time of the robbery/homicide. The judge concluded Milliner's statement would not have changed the outcome of the trial.

Judge Cronin also denied defendant's PCR petition without an evidentiary hearing. The judge found defendant could not prove trial counsel was ineffective for failing to demand a hearing regarding the State's discovery violation or locate and call Milliner as an alibi witness. The judge noted that Milliner's effective denial that she was with defendant at the time of the robbery/homicide was clearly inconsistent with defendant's alibi theory. The judge concluded:

> In view of this inconsistency as reflected in available discovery, any trial counsel decision not to locate or further interview Ms. Milliner "falls within the wide range of reasonable professional assistance" which is not actionable under [the first prong of] Strickland [v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)]. Additionally, in light of the inculpatory effect of Ms. Milliner's statement . . . and the overwhelming evidence of guilt . . . [defendant] also fails to establish prejudice as required by Strickland's second prong.

Judge Cronin also found defendant could not prove trial counsel was ineffective for failing to be present at the Kahn interview. The judge concluded defendant had no Sixth Amendment right to counsel concerning her claims of sexual harassment and official misconduct that were unrelated to the criminal charges, and she chose to speak to Kahn about the homicide/robbery after advised she did not have to do so.

Judge Cronin found that even if defendant had a right to counsel at the Kahn interview, she could not satisfy the second Strickland prong -- that counsel's deficient performance prejudiced the defense. The judge noted that defendant gave three different accounts of her involvement in the crimes, and admitted that she lied to the police. The judge determined it was unlikely a jury would have found defendant's exculpatory version credible even absent Kahn's testimony, especially in light of the

overwhelming evidence against defendant, including her own admissions during cross-examination.

Judge Cronin found appellate counsel had no obligation to challenge the State's use of defendant's statement to Kahn on rebuttal. Citing Kansas v. Ventris, 556 U.S. 586, 594, 129 S. Ct. 1841, 1847, 173 L. Ed. 2d 801, 809 (2009), the judge concluded that statements obtained in contravention of a defendant's Sixth Amendment right to counsel are admissible to challenge his inconsistent testimony at trial.

Judge Cronin rejected defendant's claim she was deprived of her Sixth Amendment right to counsel during her motion to withdraw her guilty plea. The judge found defendant filed the motion pro se and against trial counsel's advice, and could not convert her own bad decision making into a constitutional violation. Citing State v. Taccetta, 200 N.J. 183, 200 (2009), the judge concluded defendant could not withdraw her guilty plea and plead guilty because she certified that she was innocent and the factual basis for her guilty plea was false. This appeal followed.

"[A] motion for a new trial is addressed to the sound discretion of the trial judge, and the exercise of that discretion will not be interfered with on appeal unless a clear abuse has been shown." State v. Russo, 333 N.J. Super. 119, 137 (App. Div. 2000). "An abuse of discretion only arises on demonstration of

manifest error or injustice[,]" State v. Torres, 183 N.J. 554, 572 (2005), and occurs when the trial judge's "decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Jacoby v. Jacoby, 427 N.J. Super. 109, 116 (App. Div. 2012) (quoting Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002)).

To obtain a new trial based on newly-discovered evidence, the defendant must establish the new "evidence is (1) material, and not 'merely' cumulative, impeaching, or contradictory; (2) . . . was discovered after completion of the trial and 'was not discoverable by reasonable diligence beforehand;'" and (3) could "probably change the jury's verdict if a new trial [was] granted." State v. Ways, 180 N.J. 171, 187 (2004) (quoting State v. Carter, 85 N.J. 300, 314 (1981)).

The mere raising of a claim for PCR does not entitle the defendant to an evidentiary hearing. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div.), certif. denied, 162 N.J. 199 (1999). Rather, trial courts should grant evidentiary hearings and make a determination on the merits only if the defendant has presented a prima facie claim of ineffective assistance, material issues of disputed facts lie outside the record, and resolution of the issues necessitates a hearing. R. 3:22-10(b); State v. Porter, 216 N.J. 343, 355 (2013). We review a judge's decision to deny a PCR

13

petition without an evidentiary hearing for abuse of discretion. State v. Preciose, 129 N.J. 451, 462 (1992).

To establish a prima facie claim of ineffective assistance of counsel, the defendant

> must satisfy two prongs. First, he must demonstrate that counsel made errors "so serious that 'counsel' was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." An attorney's representation is deficient when it [falls] below an objective standard of reasonableness.
>
> Second, a defendant "must show that the deficient performance prejudiced the defense." A defendant will be prejudiced when counsel's errors are sufficiently serious to deny him a "fair trial." The prejudice standard is met if there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." A "reasonable probability" simply means a "probability sufficient to undermine confidence in the outcome" of the proceeding.
>
> [State v. O'Neil, 219 N.J. 598, 611 (quoting Strickland, supra, 466 U.S. at 687-88, 694, 104 S. Ct. at 2064, 2068, 8 L. Ed. 2d at 693, 698).]

"In order to establish a prima facie claim, [the defendant] must do more that make bald assertions that he was denied the effective assistance of counsel. He must allege facts sufficient to demonstrate counsel's alleged substandard performance." Cummings, supra, 321 N.J. Super. at 170. The defendant must establish, by

a preponderance of the credible evidence, that he is entitled to the required relief.  State v. Nash, 212 N.J. 518, 541 (2013).

We have considered defendant's contentions in light of the record and applicable legal principles and conclude they are without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(2).  We affirm substantially for the reasons Judge Cronin expressed his cogent written opinion.  We discern no abuse of discretion in the denial of defendant's motion for a new trial and PCR petition.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION