1/21/2022 2:44:38 PM

# Compare Results

| Old File: | | New File: |
|---|---|---|
| **20-637.pdf** | versus | **20-637_new.pdf** |
| **32 pages (181 KB)** | | **32 pages (184 KB)** |
| 1/19/2022 2:45:58 PM | | 1/21/2022 2:42:53 PM |

| Total Changes | Content | | Styling and Annotations |
|---|---|---|---|
| **1** | 1 | Replacement | 0 Styling |
| | 0 | Insertions | 0 Annotations |
| | 0 | Deletions | |

Go to First Change (page 1)

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## HEMPHILL *v.* NEW YORK

### CERTIORARI TO THE COURT OF APPEALS OF NEW YORK

No. 20–637.   Argued October 5, 2021—Decided January 20, 2022

In April 2006, a stray 9-millimeter bullet killed a 2-year-old child after a street fight in the Bronx. Eyewitnesses described the shooter as wearing a blue shirt or sweater. Police officers determined Ronnell Gilliam was involved and that Nicholas Morris had been at the scene. A search of Morris' apartment revealed a 9-millimeter cartridge and three .357-caliber bullets. Gilliam initially identified Morris as the shooter, but he subsequently said that Darrell Hemphill, Gilliam's cousin, was the shooter. Not crediting Gilliam's recantation, the State charged Morris with the child's murder and possession of a 9-millimeter handgun. In a subsequent plea deal, the State agreed to dismiss the murder charges against Morris if he pleaded guilty to a new charge of possession of a .357 revolver, a weapon that had not killed the victim. Years later, the State indicted Hemphill for the child's murder after learning that Hemphill's DNA matched a blue sweater found in Gilliam's apartment shortly after the murder. At his trial, Hemphill elicited undisputed testimony from a prosecution witness that police had recovered 9-millimeter ammunition from Morris' apartment, thus pointing to Morris as the culprit. Morris was not available to testify at Hemphill's trial because he was outside the United States. Relying on *People* v. *Reid*, 19 N. Y. 3d 382, 388, 971 N. E. 2d 353, 357, and over the objection of Hemphill's counsel, the trial court allowed the State to introduce parts of the transcript of Morris' plea allocution to the .357 gun possession charge as evidence to rebut Hemphill's theory that Morris committed the murder. The court reasoned that although Morris' out-of-court statements had not been subjected to cross-examination, Hemphill's arguments and evidence had "opened the door" and admission of the statements was reasonably necessary to correct the misleading impression Hemphill had created. The State, in its closing argument, cited Morris' plea allocution and emphasized that possession of a .357

revolver, not murder, was the crime Morris committed. The jury found Hemphill guilty. Both the New York Appellate Division and the Court of Appeals affirmed Hemphill's conviction.

*Held*: The trial court's admission of the transcript of Morris' plea allocution over Hemphill's objection violated Hemphill's Sixth Amendment right to confront the witnesses against him. Pp. 6–15.

(a) The State's threshold argument—that Hemphill's failure to present his claim adequately to the state courts should prevent the Court from deciding his federal-law challenge to the state-court decision—is rejected. Hemphill satisfied the presentation requirement in state court. See *Street* v. *New York*, 394 U. S. 576, 584. At every level of his proceedings in state court, Hemphill argued that the admission of Morris' plea allocution violated his Sixth Amendment right to confrontation as interpreted by this Court. And "[o]nce a federal claim is properly presented, a party can make any argument in support of that claim." *Yee* v. *Escondido*, 503 U. S. 519, 534. Pp. 6–8.

(b) The Confrontation Clause of the Sixth Amendment provides a criminal defendant the bedrock right "to be confronted with the witnesses against him." In *Crawford* v. *Washington*, 541 U. S. 36, the Court examined the history of the confrontation right at common law and concluded that "the principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure," which allowed the "use of *ex parte* examinations as evidence against the accused." *Id.*, at 50. The *Crawford* Court reasoned that because "the Sixth Amendment does not suggest any open-ended exceptions from the confrontation requirement to be developed by the courts," the confrontation guarantee was "most naturally read" to admit "only those exceptions established at the time of the founding." *Id.*, at 54; see also *Giles* v. *California*, 554 U. S. 353, 377. Because "the Framers would not have allowed admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination," the Court rejected its previous "reliability approach" to the Sixth Amendment's confrontation right described in *Ohio* v. *Roberts*, 448 U. S. 56, 66, which had permitted the admission of statements of an unavailable witness so long as those statements had "adequate indicia of reliability." Pp. 8–9.

(c) The Court rejects the State's contention that the "opening the door" rule incorporated in *People* v. *Reid* and applied here is not a Confrontation Clause exception at all but merely a "procedural rule" limiting only the manner of asserting the confrontation right, not its substantive scope. While the Court's precedents do recognize that the Sixth Amendment leaves States with flexibility to adopt reasonable

procedural rules that bear on the exercise of a defendant's confrontation right, see, *e.g.*, *Melendez-Diaz* v. *Massachusetts*, 557 U. S. 305, 327, the door-opening principle discussed in *Reid* is not in the same class of procedural rules. *Reid*'s door-opening principle is a substantive principle of evidence that dictates what material is relevant and admissible in a case. The State would have trial judges weigh the reliability or credibility of testimonial hearsay evidence, but that approach would negate *Crawford*'s emphatic rejection of the reliability-based approach to the Confrontation Clause guarantee. Here, it was not for the trial judge to determine whether Hemphill's theory that Morris was the shooter was unreliable, incredible, or otherwise misleading in light of the State's proffered, unconfronted plea evidence, nor whether this evidence was reasonably necessary to correct that misleading impression. Pp. 9–11.

(d) The Court also rejects the State's insistence that the *Reid* rule is necessary to safeguard the truth-finding function of courts because it prevents the selective and misleading introduction of evidence. The Court has not allowed such considerations to override the rights the Constitution confers to criminal defendants. And none of the cases the State relies upon for support—*Kansas* v. *Ventris*, 556 U. S. 586; *Harris* v. *New York*, 401 U. S. 222; *Walder* v. *United States*, 347 U. S. 62—involved exceptions to constitutional requirements. Pp. 11–13.

(e) The State's concern that a reversal will leave prosecutors without recourse to protect against abuses of the confrontation right is overstated. "[W]ell-established rules" of evidence "permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Holmes* v. *South Carolina*, 547 U. S. 319, 326. Finally, the rule of completeness does not apply here, as Morris' plea allocution was not part of any statement that Hemphill introduced. The Court does not address whether and under what circumstances that rule might allow the admission of testimonial hearsay against a criminal defendant. Pp. 13–14.

35 N. Y. 3d 1035, 150 N. E. 3d 356, reversed and remanded.

SOTOMAYOR, J., delivered the opinion of the Court, in which ROBERTS, C. J., and BREYER, ALITO, KAGAN, GORSUCH, KAVANAUGH, and BARRETT, JJ., joined. ALITO, J., filed a concurring opinion, in which KAVANAUGH, J., joined. THOMAS, J., filed a dissenting opinion.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 20–637

---

## DARRELL HEMPHILL, PETITIONER *v.* NEW YORK

### ON WRIT OF CERTIORARI TO THE COURT OF APPEALS OF NEW YORK

[January 20, 2022]

JUSTICE SOTOMAYOR delivered the opinion of the Court.

In 2006, a stray 9-millimeter bullet killed a 2-year-old child in the Bronx. The State charged Nicholas Morris with the murder, but after trial commenced, it offered him a plea deal for a lesser charge. The State specifically required Morris to admit to a new charge of possession of a .357-magnum revolver, not the 9-millimeter handgun originally charged in the indictment and used in the killing.

Years later, the State prosecuted petitioner Darrell Hemphill for the same murder. At his trial, Hemphill blamed Morris, and he elicited undisputed testimony from a prosecution witness that police had recovered 9-millimeter ammunition from Morris' nightstand. Morris was outside the United States and not available to testify. The trial court allowed the State to introduce parts of the transcript of Morris' plea allocution as evidence to rebut Hemphill's theory that Morris committed the murder. The court reasoned that Hemphill's arguments and evidence had "open[ed] the door" to the introduction of these testimonial out-of-court statements, not subjected to cross-examination, because they were "'reasonably necessary'" to "'correct'" the "'misleading impression'" Hemphill had created.

*People* v. *Reid,* 19 N. Y. 3d 382, 388, 971 N. E. 2d 353, 357 (2012).

The question is whether the admission of the plea allocution under New York's rule in *People* v. *Reid* violated Hemphill's Sixth Amendment right to confront the witnesses against him. The Court holds that it did. Hemphill did not forfeit his confrontation right merely by making the plea allocution arguably relevant to his theory of defense.

## I

### A

In April 2006, Ronnell Gilliam and several other individuals got into a physical fight near Tremont Avenue in the Bronx. Shortly after the fight, someone fired a 9-millimeter handgun. The bullet killed a 2-year-old child sitting in a nearby minivan.

Police officers determined that Gilliam was involved and that Nicholas Morris, Gilliam's best friend, had been at the scene. Officers searched Morris' apartment. On Morris' nightstand, the officers found a 9-millimeter cartridge and three .357-caliber bullets. Three witnesses identified Morris as the shooter out of a police lineup.

The police arrested Morris the next day and observed bruising on his knuckles consistent with fist fighting. Gilliam then surrendered and identified Morris as the shooter. Gilliam later returned to the police station and recanted, stating that Hemphill, Gilliam's cousin, had in fact been the shooter. Investigators initially did not credit Gilliam's recantation; instead, the State charged Morris with the child's murder and for possession of a 9-millimeter handgun. After opening statements at Morris' 2008 trial, however, the State decided not to oppose Morris' application for a mistrial to allow the State to reconsider the charges against him.

Approximately six weeks later, the State agreed to dismiss the murder charges against Morris if he pleaded guilty

to criminal possession of a weapon. But rather than having Morris plead to the charge in the existing indictment for possession of a 9-millimeter handgun, the State filed a new charge alleging that Morris had possessed a .357-magnum revolver, a different type of firearm than the one used to kill the victim. In exchange for this plea, the prosecution recommended a sentence of time served. The State and Morris' counsel agreed that there was insufficient evidence of Morris' possession of a .357-magnum revolver to obtain an indictment absent Morris' willingness to admit to the allegations. Morris did so, against his attorney's advice, to secure his release that day.

In 2011, the State learned that Hemphill's DNA matched a sample from a blue sweater that police had recovered in a search of Gilliam's apartment shortly after the crime. Eyewitnesses had described the shooter as wearing a blue shirt or sweater. In 2013, Hemphill was arrested and indicted for the murder.

B

At trial, Hemphill pursued a third-party culpability defense by blaming Morris for the shooting. In his opening statement, Hemphill's counsel noted that officers had recovered 9-millimeter ammunition from Morris' nightstand hours after a 9-millimeter bullet killed the victim. The State did not object, but later contended that Hemphill's argument had been misleading because officers also had found .357-caliber bullets on the nightstand and because Morris ultimately pleaded guilty to possessing a .357 revolver.

Morris, however, was unavailable to testify at Hemphill's trial. As a result, the State sought to introduce the transcript of Morris' plea allocution to suggest that he had possessed only a .357 revolver. Hemphill's counsel objected, arguing that the plea allocution was "clearly hearsay" and that Hemphill was being "deprived of an opportunity [for]

cross-examination." App. 107.  The trial court deferred ruling and, in the meantime, allowed the State to put on testimony regarding the .357-caliber bullets on Morris' nightstand.  Accordingly, both the State and Hemphill elicited undisputed testimony from a law enforcement officer that a 9-millimeter cartridge and .357-caliber bullets were recovered from Morris' nightstand.

The trial court then revisited the State's application to introduce Morris' plea allocution.  Hemphill's counsel objected again, citing this Court's decision in *Crawford* v. *Washington*, 541 U. S. 36 (2004): "I think it is [a] *Crawford* violation.  I think the evidence is being offered to incriminate Mr. Hemphill.  I'm being deprived of the opportunity to examine Mr. Morris, and I don't see how it would not be a *Crawford* violation." App. 160.[1]

A few days later, the trial court announced its ruling.  The court relied on *People* v. *Reid*, 19 N. Y. 3d 382, 971 N. E. 2d 353.  In *Reid*, New York's highest court held that a criminal defendant could "ope[n] the door" to evidence that would otherwise be inadmissible under the Confrontation Clause if the evidence was "'reasonably necessary to correct [a] misleading impression'" made by the defense's "'evidence or argument.'"  *Id.,* at 388, 971 N. E. 2d, at 357 (quoting *People* v. *Massie*, 2 N. Y. 3d 179, 184, 809 N. E. 2d 1102, 1105 (2004)).  The trial court applied *Reid* as follows:

"[A] significant aspect of the defense in this case is that Morris, who [was] originally prosecuted for this homicide, was, in fact, the actual shooter and that as such, the defendant, Hemphill, was excluded as the shooter.  There is, however, evidence contrary to the argument

─────────

[1] The State responded that Morris' plea allocution was not testimonial because it did not "incriminate or point a finger at all against Mr. Hemphill." App. 160.  Before this Court, the State does not dispute that the plea allocution was testimonial, and so the Court expresses no view on the matter.

presented by the defense in this case . . . . In my judgment, the defense's argument, which in all respects is appropriate and under the circumstances of this case probably a necessary argument to make, nonetheless, opens the door to evidence offered by the [S]tate refuting the claim that Morris was, in fact, the shooter." App. 184, 185.

Based on this ruling, the State published to the jury the portions of the transcript of Morris' plea hearing containing Morris' admission to possessing a .357 revolver and his counsel's statements that he was doing so against counsel's advice, without corroborating evidence, in order to get out of jail immediately.

Hemphill premised his closing argument, like the rest of his defense, on the theory that Morris was the shooter. The State, in its closing, cited Morris' plea allocution and emphasized that possession of a .357 revolver, not murder, was "the crime [Morris] actually committed." *Id.,* at 356. After deliberations spanning multiple days, the jury found Hemphill guilty, and the court sentenced him to 25 years to life in prison.

C

Hemphill appealed. Before the Appellate Division, he argued, citing the State and Federal Constitutions, that "[t]he court denied Mr. Hemphill his right to confront the witness against him where it admitted Nicholas Morris's guilty plea statements . . . because the defense had opened the door to this evidence even though counsel had scrupulously followed the court's *in limine* rulings." Supp. App. to Brief in Opposition SA107. He added, "the prosecution's conduct here represented the type of overreach the Confrontation Clause was enacted to prevent: the production of evidence procured by the government without affording the accused the opportunity to question its reliability through cross-examination." *Id.,* at SA111.

The Appellate Division affirmed.  In relevant part, it reasoned that "[d]uring the trial, defendant created a misleading impression that Morris possessed a 9 millimeter handgun, which was consistent with the type used in the murder, and introduction of the plea allocution was reasonably necessary to correct that misleading impression."  173 App. Div. 3d 471, 477, 103 N. Y. S. 3d 64, 71 (2019).  Justice Manzanet-Daniels dissented on other grounds, arguing in part that the evidence was insufficient to support Hemphill's conviction.

Hemphill sought review from the New York Court of Appeals, the State's highest court.  He contended:

> "The Appellate Division's analysis equates presenting a valid, evidence-based third party defense with misleading the jury, opening the door to testimonial hearsay. . . . Such an approach is absurd in the context of the Confrontation Clause, the purpose of which is to afford the accused the right to meaningfully test the prosecution's proof."  App. 388.

The Court of Appeals affirmed.  35 N. Y. 3d 1035, 1036–1037, 150 N. E. 3d 356, 357–358 (2020).  This Court granted certiorari.  593 U. S. ___ (2021).

## II

Before proceeding to the merits, the Court must address the State's threshold argument that Hemphill failed to present his claim adequately to the state courts.

This Court "has almost unfailingly refused to consider any federal-law challenge to a state-court decision unless the federal claim 'was either addressed by or properly presented to the state court that rendered the decision we have been asked to review.'"  *Howell* v. *Mississippi*, 543 U. S. 440, 443 (2005) (*per curiam*) (quoting *Adams* v. *Robertson*, 520 U. S. 83, 86 (1997) (*per curiam*)).  "'No particular form

of words or phrases is essential'" for satisfying the presentation requirement, so long as the claim is "'brought to the attention of the state court with fair precision and in due time.'" *Street* v. *New York*, 394 U. S. 576, 584 (1969) (quoting *New York ex rel. Bryant* v. *Zimmerman*, 278 U. S. 63, 67 (1928)).

Hemphill has satisfied this requirement. At every level of his proceedings in state court, Hemphill argued that the admission of Morris' plea allocution violated his Sixth Amendment right to confrontation as interpreted by this Court in *Crawford*. Before the trial court, Hemphill timely objected that admission of the plea allocution would be "a *Crawford* violation." App. 160. Before the Appellate Division, he argued that the trial court "denied Mr. Hemphill his 6th Amendment right to confront the witnesses against him." Supp. App. to Brief in Opposition SA108. And before the Court of Appeals, he contended that "[t]he Appellate Division's analysis," which had affirmed the trial court's admission of the plea allocution, "is absurd in the context of the Confrontation Clause, the purpose of which is to afford the accused the right to meaningfully test the prosecution's proof." App. 388. "Once a federal claim is properly presented, a party can make any argument in support of that claim." *Yee* v. *Escondido*, 503 U. S. 519, 534 (1992). The Court may therefore consider any argument Hemphill raises in support of his claim that he did not "forfei[t] his right to exclude evidence otherwise barred by the Confrontation Clause" by "open[ing] the door to responsive evidence." Pet. for Cert. i.[2]

_____

[2] According to the dissent, Hemphill did not present his constitutional claim below because he "challenged only the misapplication of state law" (*i.e.,* the opening-the-door rule enunciated in *People* v. *Reid*, 19 N. Y. 3d 382, 971 N. E. 2d 353 (2012)) without developing his constitutional objection. *Post,* at 4 (opinion of THOMAS, J.). Not so. Hemphill argued before the Court of Appeals that the Appellate Division's interpretation of *Reid* in his case "equates presenting a valid, evidence-based third

Accordingly, the Court turns to the merits of that claim.

### III
### A

One of the bedrock constitutional protections afforded to criminal defendants is the Confrontation Clause of the Sixth Amendment, which states: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."[3]

In *Ohio* v. *Roberts*, 448 U. S. 56, 66 (1980), this Court had held that this confrontation right did not bar the admission of statements of an unavailable witness so long as those statements had "adequate 'indicia of reliability,'" meaning that they fell "within a firmly rooted hearsay exception" or otherwise bore "particularized guarantees of trustworthiness." However, 24 years later, this Court rejected that reliability-based approach to the Confrontation Clause. See *Crawford*, 541 U. S., at 61.

In charting a different path, the *Crawford* Court examined the history of the confrontation right at common law and concluded that "the principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of *ex parte* examinations as evidence against the accused." *Id.,* at 50. The

_____

party defense with misleading the jury, opening the door to testimonial hearsay"—a rule that "unjustifiably undermines the right to Confrontation" for reasons he proceeded to explain. App. 388. Thus, Hemphill expressly raised a Confrontation Clause argument and, contrary to the dissent's contention, offered the Court of Appeals "'the first opportunity'" to construe *Reid* "'in a way which saves [its] constitutionality.'" *Post,* at 9 (quoting *Cardinale* v. *Louisiana*, 394 U. S. 437, 439 (1969)). The dissent also accuses this Court of "redefin[ing] *Reid* to be what Hemphill said it was not." *Post,* at 10. Far from it: This Court accepts the Court of Appeals' conclusive determination that *Reid* authorized the admission of testimonial hearsay in this case.

[3] The Clause binds the States through the Fourteenth Amendment. *Pointer* v. *Texas*, 380 U. S. 400, 403 (1965).

Court continued, "the Framers would not have allowed admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Id.,* at 53–54.[4]  Because "[t]he text of the Sixth Amendment does not suggest any open-ended exceptions from the confrontation requirement to be developed by the courts," the requirement was "most naturally read" to admit "only those exceptions established at the time of the founding." *Id.,* at 54; see also *Giles* v. *California*, 554 U. S. 353, 377 (2008) ("declin[ing] to approve an exception to the Confrontation Clause unheard of at the time of the founding or for 200 years thereafter").

B

The State accepts all of the foregoing principles.  It does not dispute that Morris' plea allocution was testimonial, meaning that it implicated Hemphill's rights under the Confrontation Clause.  Nor does the State argue that the "opening the door" rule announced in *People* v. *Reid* and applied in Hemphill's case was an exception to the right to confrontation at common law.

The State's primary contention is that the *Reid* rule "is not an exception to the Confrontation Clause at all."  Brief for Respondent 36.  Instead, the State attempts to characterize the *Reid* rule as a mere "procedural rule" that "treats the misleading door-opening actions of counsel as the equivalent of failing to object to the confrontation violation." Brief for Respondent 31.  So construed, the argument goes,

_____

[4] The *Crawford* Court defined "testimony" as a "solemn declaration or affirmation made for the purpose of establishing or proving some fact." 541 U. S., at 51 (internal quotation marks omitted).  "[A]t a minimum," the Court explained, this includes "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and . . . police interrogations." *Id.,* at 68.  Subsequent decisions have expounded on this definition.  See, *e.g., Ohio* v. *Clark*, 576 U. S. 237, 244–245 (2015).

the *Reid* rule limits only the manner of asserting the con-
frontation right, not its substantive scope.

It is true that the Sixth Amendment leaves States with
flexibility to adopt reasonable procedural rules governing
the exercise of a defendant's right to confrontation.  For ex-
ample, "States are free to adopt procedural rules governing
objections," including contemporaneous objection require-
ments and, in the context of forensic evidence, "notice-and-
demand statutes."  *Melendez-Diaz* v. *Massachusetts*, 557
U. S. 305, 327 (2009).  In addition, the Confrontation Clause
will not bar a defendant's removal from a courtroom if, de-
spite repeated warnings, he "insists on conducting himself
in a manner so disorderly, disruptive, and disrespectful of
the court that his trial cannot be carried on with him in the
courtroom." *Illinois* v. *Allen*, 397 U. S. 337, 343 (1970).

The door-opening principle incorporated in *Reid*,
however, is not a member of this class of procedural rules.
Rather, it is a substantive principle of evidence that dic-
tates what material is relevant and admissible in a case.
See *Massie*, 2 N. Y. 3d, at 182–184, 809 N. E. 2d, at 1104–
1105 (citing *People* v. *Melendez*, 55 N. Y. 2d 445, 434 N. E.
2d 1324 (1982), a case about the admissibility of hearsay
testimony, as "[t]he leading case in this Court on 'opening
the door'"); New York State Unified Court System, Guide to
New York Evidence Rule 4.08 (2021) (explaining the "open
the door" principle as a rule of evidence).  As this case illus-
trates, the principle requires a trial court to determine
whether one party's evidence and arguments, in the context
of the full record, have created a "misleading impression"
that requires correction with additional material from the
other side.

Moreover, the State's argument would negate *Crawford*'s
emphatic rejection of the reliability-based approach of *Ohio*
v. *Roberts*.  If *Crawford* stands for anything, it is that the
history, text, and purpose of the Confrontation Clause bar

judges from substituting their own determinations of relia-
bility for the method the Constitution guarantees. The
Clause "commands, not that evidence be reliable, but that
reliability be assessed in a particular manner: by testing in
the crucible of cross-examination." *Crawford*, 541 U. S., at
61. It "thus reflects a judgment, not only about the desira-
bility of reliable evidence (a point on which there could be
little dissent), but about how reliability can best be deter-
mined." *Ibid.* "[A] mere judicial determination" regarding
the reliability of evidence is no substitute for the "constitu-
tionally prescribed method of assessing reliability." *Id.,* at
62. The upshot is that the role of the trial judge is not, for
Confrontation Clause purposes, to weigh the reliability or
credibility of testimonial hearsay evidence; it is to ensure
that the Constitution's procedures for testing the reliability
of that evidence are followed.

The trial court here violated this principle by admitting
unconfronted, testimonial hearsay against Hemphill
simply because the judge deemed his presentation to have
created a misleading impression that the testimonial hear-
say was reasonably necessary to correct. For Confrontation
Clause purposes, it was not for the judge to determine
whether Hemphill's theory that Morris was the shooter was
unreliable, incredible, or otherwise misleading in light of
the State's proffered, unconfronted plea evidence. Nor, un-
der the Clause, was it the judge's role to decide that this
evidence was reasonably necessary to correct that mislead-
ing impression. Such inquiries are antithetical to the Con-
frontation Clause.

C

The State next insists that the *Reid* rule is necessary to
safeguard the truth-finding function of courts because it
prevents the selective and misleading introduction of evi-
dence. See *Reid*, 19 N. Y. 3d, at 388, 971 N. E. 2d, at 357.
The State relies on this Court's precedents recognizing the

need for sensitivity to "'the legitimate demands of the ad-
versarial system.'" *Taylor* v. *Illinois*, 484 U. S. 400, 413
(1988) (quoting *United States* v. *Nobles*, 422 U. S. 225, 241
(1975); emphasis deleted). This argument falls short as
well. Even as it has recognized and reaffirmed the vital
truth-seeking function of a trial, the Court has not allowed
such considerations to override the rights the Constitution
confers upon criminal defendants.

The State cites a series of cases in which this Court per-
mitted a State to impeach a defendant using evidence that
would normally be barred from use at trial. Brief for Re-
spondent 32 (citing *Kansas* v. *Ventris*, 556 U. S. 586 (2009);
*Harris* v. *New York*, 401 U. S. 222 (1971); *Walder* v. *United
States*, 347 U. S. 62 (1954)). None of those cases, however,
involved exceptions to constitutional requirements. Ra-
ther, in each case, the Court considered the appropriate
scope of a prophylactic rule designed to remedy "a violation
that ha[d] already occurred." *Ventris*, 556 U. S., at 593. For
example, the Court distinguished violations of the Fourth
Amendment's guarantee against unreasonable searches or
seizures from the prophylactic rule designed to deter viola-
tions of that guarantee by excluding the fruits of such
searches or seizures from trial. *Id.,* at 590–591. Because
the prophylactic exclusionary rule is a "deterrent sanction"
rather than a "substantive guarantee," the Court applied a
balancing test to allow States to impeach defendants with
the fruits of prior Fourth Amendment violations, even
though the rule barred the admission of such fruits in the
State's case-in-chief. *Id.,* at 591 (citing *Walder*, 347 U. S.,
at 65).

In contrast, the Court has not held that defendants can
"open the door" to violations of constitutional requirements
merely by making evidence relevant to contradict their de-
fense. Thus, in *New Jersey* v. *Portash*, 440 U. S. 450, 458–
459 (1979), the Court rejected a State's effort to impeach a

defendant through the introduction of his own coerced testimony. It did so despite the strong and obvious interest in preventing perjury because the very introduction of the coerced testimony would violate the Fifth Amendment's provision that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." In view of that guarantee, balancing of interests was "not simply unnecessary," but "impermissible." *Portash*, 440 U. S., at 459. The Sixth Amendment speaks with equal clarity: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." It admits no exception for cases in which the trial judge believes unconfronted testimonial hearsay might be reasonably necessary to correct a misleading impression. Courts may not overlook its command, no matter how noble the motive. See *United States* v. *Gonzalez-Lopez*, 548 U. S. 140, 145 (2006) ("It is true enough that the purpose of the rights set forth in [the Sixth] Amendment is to ensure a fair trial; but it does not follow that the rights can be disregarded so long as the trial is, on the whole, fair").

D

The State warns that a reversal will leave prosecutors without recourse to protect against abuses of the confrontation right. These concerns are overstated. State and federal hearsay rules generally preclude all parties from introducing unreliable, out-of-court statements for the truth of the matter asserted. See, *e.g.,* Fed. Rule Evid. 802. Even for otherwise admissible evidence, "well-established rules," such as Federal Rule of Evidence 403, "permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Holmes* v. *South Carolina*, 547 U. S. 319, 326 (2006). If a court admits evidence before its misleading or unfairly prejudicial nature becomes apparent, it generally retains the authority to

withdraw it, strike it, or issue a limiting instruction as appropriate. See, *e.g.,* Fed. Rule Evid. 105; New York State Unified Court System, Guide to New York Evidence Rule 1.13(1) ("Absent undue prejudice to a party, a judge may revisit his or her own evidentiary rulings during trial").

Finally, the Court does not decide today the validity of the common-law rule of completeness as applied to testimonial hearsay. Under that rule, a party "'against whom a part of an utterance has been put in, may in his turn complement it by putting in the remainder.'" *Beech Aircraft Corp.* v. *Rainey*, 488 U. S. 153, 171 (1988) (quoting 7 J. Wigmore, Evidence §2113, p. 653 (J. Chadbourn rev. 1978)); see also Fed. Rule Evid. 106. The parties agree that the rule of completeness does not apply to the facts of this case, as Morris' plea allocution was not part of any statement that Hemphill introduced. Whether and under what circumstances that rule might allow the admission of testimonial hearsay against a criminal defendant presents different issues that are not before this Court.[5]

\*  \*  \*

The Confrontation Clause requires that the reliability and veracity of the evidence against a criminal defendant be tested by cross-examination, not determined by a trial court. The trial court's admission of unconfronted testimonial hearsay over Hemphill's objection, on the view that it was reasonably necessary to correct Hemphill's misleading argument, violated that fundamental guarantee. The judgment of the New York Court of Appeals is reversed, and the

---

[5] The State also asks this Court to hold the constitutional error in this case harmless beyond a reasonable doubt, see *Chapman* v. *California*, 386 U. S. 18, 24 (1967), citing what it calls "substantial independent evidence of [Hemphill's] guilt," Brief for Respondent 49. It offers no reason, however, for the Court to depart from its "general custom of allowing state courts initially to assess the effect of erroneously admitted evidence in light of substantive state criminal law." *Lilly* v. *Virginia*, 527 U. S. 116, 139 (1999).

case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 20–637

_____

## DARRELL HEMPHILL, PETITIONER *v.* NEW YORK

ON WRIT OF CERTIORARI TO THE COURT OF APPEALS
OF NEW YORK

[January 20, 2022]

JUSTICE ALITO, with whom JUSTICE KAVANAUGH joins, concurring.

I agree with the Court's conclusion that—assuming Morris's statement was testimonial—its admission violated the Confrontation Clause of the Sixth Amendment. I write separately to address the conditions under which a defendant can be deemed to have validly waived the right to confront adverse witnesses.

"The question of a waiver of a federally guaranteed constitutional right is, of course, a federal question controlled by federal law." *Brookhart* v. *Janis*, 384 U. S. 1, 4 (1966). Waiver consists in the "intentional relinquishment or abandonment of a known right or privilege." *Johnson* v. *Zerbst*, 304 U. S. 458, 464 (1938). But a valid waiver need not be express. Implied waiver can be established through "'a course of conduct'" even "absent formal or express statements of waiver." *Berghuis* v. *Thompkins*, 560 U. S. 370, 383–384 (2010) (quoting *North Carolina* v. *Butler*, 441 U. S. 369, 373 (1979)). In the prototypical case of implied waiver, the relevant course of conduct signals an intention to relinquish the right at issue. But "[a]s a general proposition, the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford." *Berghuis*, 560 U. S., at 385.

Our precedents establish that a defendant can impliedly waive the Sixth Amendment right to confront adverse witnesses through conduct.\*  The cause of implied waiver can be a "failure to object to the offending evidence" in accordance with the procedural standards fixed by state law. *Melendez-Diaz* v. *Massachusetts*, 557 U. S. 305, 314, n. 3 (2009).  But implied waiver can also occur when a defendant engages in a course of conduct that is incompatible with a demand to confront adverse witnesses.  In *Illinois* v. *Allen*, 397 U. S. 337 (1970), for instance, we held that a defendant may relinquish his right to confront adverse witnesses by "conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom." *Id.,* at  343.

The problem with the New York rule at issue in this case is that its application is predicated on neither conduct evincing intent to relinquish the right of confrontation nor action inconsistent with the assertion of that right.  The introduction of evidence that is misleading as to the real facts does not, in itself, indicate a decision regarding whether any given declarant should be subjected to cross-examination.  Nor is that kind of maneuver inconsistent with the assertion of the right to confront a declarant whose out-of-court statements could potentially set the record straight.

There are other circumstances, however, under which a defendant's introduction of evidence may be regarded as an implicit waiver of the right to object to the prosecution's use

--------

\*The conduct relevant to waiver may be the defendant's or that of trial counsel.  As a rule, for decisions "pertaining to the conduct of the trial, the defendant is 'deemed bound by the acts of his lawyer-agent'" and charged with the knowledge of trial counsel. *New York* v. *Hill*, 528 U. S. 110, 115 (2000) (quoting *Link* v. *Wabash R. Co.*, 370 U. S. 626, 634 (1962)).  The exceptions to this rule are few, and they do not encompass decisions regarding what arguments to pursue at trial.  See *Hill*, 528 U. S., at 115.

of evidence that might otherwise be barred by the Confrontation Clause. Under the traditional rule of completeness, if a party introduces all or part of a declarant's statement, the opposing party is entitled to introduce the remainder of that statement or another related statement by the same declarant, regardless of whether the statement is testimonial or there was a prior opportunity to confront the declarant. See, *e.g.,* 1 B. Bergman, N. Hollander, & T. Duncan, Wharton's Criminal Evidence §4:10 (15th ed. 1997) (explaining rule of completeness and collecting cases); Fed. Rule Evid. 106 (partially codifying rule of completeness with respect to writings and recorded statements).

The rule of completeness fits comfortably within the concept of implied waiver. By introducing part or all of a statement made by an unavailable declarant, a defendant has made a knowing and voluntary decision to permit that declarant to appear as an unconfronted witness. As a result, the defendant cannot consistently maintain that the remainder of the declarant's statement or the declarant's other statements on the same subject should not be admitted due to the impossibility of cross-examining that declarant. The defendant's decision to present the statement of an unavailable declarant is inconsistent with the simultaneous assertion of the Sixth Amendment right to subject that declarant to cross-examination.

Analogous logic governs the Fifth Amendment privilege against self-incrimination. As our precedent makes clear, when an accused takes the stand, he implicitly "'determines the area of disclosure and therefore of inquiry'" and thus "cannot reasonably claim that the Fifth Amendment gives him . . . an immunity from cross-examination on the matters he has himself put into dispute." *Brown* v. *United States*, 356 U. S. 148, 155–156 (1958).

The Sixth Amendment right to confrontation should be analyzed no differently. When a defendant introduces the statement of an unavailable declarant on a given subject,

he commits himself to the trier of fact's examination of what the declarant has to say on that subject. The remainder of the declarant's statement or statements—and any other statements by the same declarant on the same subject—are fair game. The defendant cannot reasonably claim otherwise, given his tactical choice to put the declarant's statements on the relevant subject in contention despite his unavailability for cross-examination. And that is true regardless of whether the defendant attempts to "invoke" his right to confront an unavailable declarant after introducing his out-of-court statements. Having made the choice to introduce the statements of an unavailable declarant, a defendant cannot be heard to complain that he cannot cross-examine that declarant with respect to the remainder of that statement or the declarant's related statements on the same subject.

\* \* \*

The Court emphasizes that its decision does not call into question the rule of completeness or other principles that may support implied waiver of the confrontation right. On this understanding, I join the opinion of the Court in full.

# SUPREME COURT OF THE UNITED STATES

_____

No. 20–637

_____

## DARRELL HEMPHILL, PETITIONER *v.* NEW YORK

ON WRIT OF CERTIORARI TO THE COURT OF APPEALS
OF NEW YORK

[January 20, 2022]

JUSTICE THOMAS, dissenting.

This Court may review "[f]inal judgments or decrees rendered by the highest court of a State" only where, as relevant here, a federal right "is specially set up or claimed" in the state court. 28 U. S. C. §1257(a). Because Darrell Hemphill did not raise his Sixth Amendment claim in the New York Court of Appeals, we lack jurisdiction to review that court's decision. I respectfully dissent.

## I

Under New York case law, a trial court may generally admit otherwise inadmissible evidence if a party has "opened the door" to its introduction at trial. *People* v. *Massie*, 2 N. Y. 3d 179, 180, 809 N. E. 2d 1102 (2004) (internal quotation marks omitted). A party "opens the door" when he presents "evidence or argument" that is "incomplete and misleading," and responsive evidence is necessary to "correct the misleading impression." *Id.*, at 184, 809 N. E. 2d, at 1105. In *People* v. *Reid*, 19 N. Y. 3d 382, 388, 971 N. E. 2d 353, 357 (2012), the New York Court of Appeals held that this door-opening doctrine permits a trial court to admit testimonial hearsay otherwise barred by the Sixth Amendment's Confrontation Clause. In this case, invoking *Reid*, the trial court permitted the prosecution to introduce Nicholas Morris' plea allocution to rebut Hemphill's defense that Morris possessed the murder weapon. See *ante,* at 3–5.

Hemphill argues in this Court that the *Reid* rule violates
the Sixth Amendment. That claim is not properly before
us. Under 28 U. S. C. §1257, "we will not consider a peti-
tioner's federal claim unless it was either addressed by or
properly presented to the state court that rendered the de-
cision we have been asked to review." *Adams* v. *Robertson*,
520 U. S. 83, 86 (1997) (*per curiam*). When the state court
does not "expressly address the question on which we
granted certiorari," but is instead "silent on [the] federal
question before us, we assume that the issue was not
properly presented." *Ibid.* The petitioner then "bears the
burden of . . . demonstrating that the state court had a fair
opportunity to address the federal question that is sought
to be presented." *Id.,* at 87 (internal quotation marks omit-
ted).

The New York Court of Appeals did not address—"ex-
pressly" or otherwise, *id.,* at 86—Hemphill's Sixth Amend-
ment claim. It affirmed the trial court's application of *Reid*
in a single sentence: "[T]he trial court did not abuse its dis-
cretion by admitting evidence that the allegedly culpable
third party pleaded guilty to possessing a firearm other
than the murder weapon." 35 N. Y. 3d 1035, 1036, 150
N. E. 3d 356, 358 (2020). This lone sentence does not evince
any awareness of, let alone respond to, a Confrontation
Clause claim. Because the Court of Appeals was "silent on
[the] federal question before us," Hemphill must prove that
he afforded the state court a "fair opportunity" to address
his current Sixth Amendment claim. *Adams*, 520 U. S., at
86–87 (internal quotation marks omitted).

Hemphill does not meet that burden. To provide the
Court of Appeals with a "fair opportunity" to evaluate his
Sixth Amendment claim, Hemphill was required to raise
that claim "with fair precision," *New York ex rel. Bryant* v.
*Zimmerman*, 278 U. S. 63, 67 (1928), and in an "unmistak-
able manner," *Dewey* v. *Des Moines*, 173 U. S. 193, 198
(1899), such that "the mind of the state court was directed

to [the federal] question," *Capital City Dairy Co.* v. *Ohio*, 183 U. S. 238, 248 (1902); see also *Marvin* v. *Trout*, 199 U. S. 212, 223 (1905). Put simply, there must have been a "real contest . . . upon" the federal claim in state court. *Morrison* v. *Watson*, 154 U. S. 111, 115 (1894); accord, *Illinois* v. *Gates*, 462 U. S. 213, 222–223 (1983).

Here, there was no contest upon any federal claim in the New York Court of Appeals. In his briefing before that court, Hemphill asserted that the "*only* issue before [that] Court [was] whether the defense opened the door to Morris's testimonial hearsay." App. 385 (emphasis added). To that end, Hemphill argued that his defense's presentation of evidence was not "misleading" under *Massie*, *Reid*, and other cases. See App. 386–387. Of course, whether Hemphill triggered New York's "substantive principle of evidence," *ante,* at 10, is a question of state law "not subject to review here," *Moore* v. *Illinois*, 408 U. S. 786, 799 (1972); see also *Hiawassee River Power Co.* v. *Carolina-Tennessee Power Co.*, 252 U. S. 341, 343 (1920). Federal law does not govern whether a defendant's presentation of his case is "misleading." Thus, Hemphill pressed only a state-law claim in the New York Court of Appeals.

True, Hemphill cited one Sixth Amendment precedent, *Crawford* v. *Washington*, 541 U. S. 36 (2004), and stated that "the introduction of Morris's guilty plea minutes violated [his] Sixth Amendment right." App. 385. But Hemphill reached that conclusion not because there was a "real contest . . . upon" the constitutionality of the *Reid* rule, *Morrison*, 154 U. S., at 115, but rather because the trial court misapplied *Reid* and thus improperly admitted unconfronted testimonial hearsay. Put another way, Hemphill never argued that evidence that *complied* with *Reid* violated the Confrontation Clause. To the contrary, Hemphill understood *Reid* to be constitutional. As Hemphill explained, "both the trial judge and the Appellate

Division recognized that [Morris'] statements would *otherwise be barred* by the Confrontation Clause" if he had not opened the door. App. 385. (emphasis added). In short, everyone agreed on what the Sixth Amendment required; the only dispute was whether the trial court misapplied New York's door-opening doctrine.

The Court declines to address the substance of Hemphill's argument in the Court of Appeals. It focuses instead on Hemphill's remark, toward the end of his analysis, that the Appellate Division's ruling "unjustifiably undermine[d]" the right to confrontation and was "absurd in the context of the Confrontation Clause." *Id.*, at 388. But this was not a challenge to the constitutionality of the *Reid* rule; rather, it was an explanation why the Appellate Division's approach to *Reid* represented "a radical shift never adopted by" the New York Court of Appeals in *Reid* or its progeny. App. 388. Hemphill repeated that charge at length in his reply brief. See *id.,* at 404–406. Notably, he faulted the trial court for its "basic misunderstanding of the *Reid* doctrine." *Id.,* at 406. Thus, as before, Hemphill challenged only the misapplication of state law.

Nonetheless, even if the Court were correct that Hemphill's fleeting reference to the Confrontation Clause addressed the constitutionality of the *Reid* rule, Hemphill still would not have raised a "properly presented" federal claim under 28 U. S. C. §1257. *Adams*, 520 U. S., at 86. For more than a century, this Court has held that "[a] general statement that the decision of a court is against the constitutional rights of the objecting party . . . will not raise a federal question." *Clarke* v. *McDade*, 165 U. S. 168, 172 (1897); see also *Chicago, I. & L. R. Co.* v. *McGuire*, 196 U. S. 128, 131 (1905) ("mere suggestion of a violation of a Federal right"—rather than "the distinct presentation of a Federal question"—is inadequate). A litigant must adequately develop any federal claim in his state briefing in order to give

the state court a "fair opportunity" to assess the claim. *Adams*, 520 U. S., at 87 (internal quotation marks omitted). Here, the Court highlights two statements from Hemphill's state-court briefing that, at best, offered a general and unreasoned assertion that the New York courts violated the Sixth Amendment. Such an unspecific statement manifestly failed to give the Court of Appeals a "fair opportunity" to assess any constitutional claim.

The Court tacitly recognizes that its chosen excerpts from Hemphill's brief are inadequate. It asserts that Hemphill, after making those statements, "proceeded to explain" the basis for a Confrontation Clause claim. *Ante,* at 8, n. 2. The record demonstrates otherwise. Hemphill did not cite a single case. He made no legal argument. In fact, he did not even address the right to confront adverse witnesses. Rather, Hemphill lamented that, "[a]s a practical matter," the Appellate Division's approach "create[d] a minefield for counsel in which the only way for the accused to rely on the rules of evidence or constitutional protections is to remain mute." App. 388. This general grievance about the inability to present evidence or argument in defense says nothing about the Confrontation Clause. To the contrary, under our precedents, the right to present a defense in a state criminal trial is guaranteed by the Sixth Amendment's Compulsory Process Clause and the Fourteenth Amendment's Due Process Clause. See, *e.g., Washington* v. *Texas*, 388 U. S. 14, 19 (1967). A claim under those provisions would not preserve a Confrontation Clause claim. See *Gates*, 462 U. S., at 219–220. It follows that Hemphill's assertion about the practicalities of criminal defense, with no citation to any authority, is even more obviously inadequate.

Ultimately, the Court all but concedes Hemphill's failure to develop his claim below, but relies on *Yee* v. *Escondido*, 503 U. S. 519 (1992), for the proposition that we may "consider any argument Hemphill raises in support of his claim." *Ante,* at 7. But *Yee* still requires a federal claim to

be "properly presented" to the state court, even if a new *argument* in support of that claim is raised for the first time here. 503 U. S., at 534. So, in *Yee*, the Fifth Amendment taking claim was properly presented because the petitioners "unquestionably raised [that] claim in the state courts" based on a "physical taking argument," and it was "unclear" only whether they also raised a related "regulatory taking" argument. *Ibid.* Here, by contrast, Hemphill developed no basis for any federal claim before the Court of Appeals. *Yee* is therefore inapplicable and §1257 bars this Court's review.

## II

Hemphill's failure to properly present his Sixth Amendment claim to the New York Court of Appeals divests this Court of jurisdiction. To be sure, on rare occasions, this Court has excused the failure to present a federal claim in state court. See, *e.g., Three Affiliated Tribes of Fort Berthold Reservation* v. *Wold Engineering, P. C.*, 476 U. S. 877, 883 (1986). Our insistence on proper presentation has been "'almost,'" though not completely, "'unfailin[g].'" *Ante*, at 6 (quoting *Howell* v. *Mississippi*, 543 U. S. 440, 443 (2005) (*per curiam*)). But, in my view, the Court's recent treatment of §1257's proper-presentation requirement as merely prudential is erroneous. We have no authority to forgive a petitioner's failure to raise a federal claim in state court, because the proper-presentation requirement is a jurisdictional prerequisite to our review. Absent jurisdiction, the only appropriate remedy is dismissal.[1]

Since the Judiciary Act of 1789, §25, 1 Stat. 85, Congress

---

[1] Even if the proper-presentation requirement were merely prudential, I still would dismiss this case, albeit as improvidently granted. I see no reason to deviate from our "almost unfailin[g]" refusal to hear improperly presented federal claims. *Howell*, 543 U. S., at 443. In this case, like many others, "'the circumstances . . . justify no exception.'" *Id.,* at 446 (collecting cases). Particularly here, strong interests in comity counsel against hearing Hemphill's Sixth Amendment claim. See Part III, *infra.*

has permitted this Court to review the judgments of state courts only when petitioners properly present their federal claims to those courts below. See *Gates*, 462 U. S., at 218. This Court's earliest cases held that the absence of a federal claim in the state court defeats this Court's jurisdiction. See, *e.g., Owings* v. *Norwood's Lessee*, 5 Cranch 344, 347 (1809). Justice Story explained: "[T]o give this court appellate jurisdiction two things should have occurred and be apparent in the record: first, that some one of the [federal] questions . . . did arise in the court below; and secondly, that a decision was actually made thereon by the same court." *Crowell* v. *Randell*, 10 Pet. 368, 392 (1836).[2] That conclusion was unremarkable given that the proper-presentation requirement has always appeared in this Court's only statutory grant of jurisdiction to review state-court decisions.

For nearly 200 years, this Court adhered to the proper-presentation requirement as a jurisdictional rule. The Court routinely dismissed cases for lack of jurisdiction when the petitioner failed to properly present his federal claim to the state court. See, *e.g., Oxley Stave Co.* v. *Butler County*, 166 U. S. 648, 660 (1897); *Cincinnati, N. O. & T. P. R. Co.* v. *Slade*, 216 U. S. 78, 83–84 (1910); *Cardinale* v. *Louisiana*, 394 U. S. 437, 439 (1969); see also *Howell*, 543 U. S., at 445 (noting "the long line of cases clearly stating that the presentation requirement is jurisdictional"). Even a century ago, it was "well settled" that this Court was "without jurisdiction to review the judgment of a State court . . . by reason of a federal question which was not raised below or called to the attention of or decided by the

_____

[2] Our later cases have stated this test in the disjunctive. See *Illinois* v. *Gates*, 462 U. S. 213, 218, n. 1 (1983). Because neither precondition is satisfied—Hemphill did not raise his Sixth Amendment claim below, nor did the New York Court of Appeals address any such claim—I express no view on whether a federal claim must be both pressed and passed upon in the state court.

State court." *New York ex rel. Rosevale Realty Co.* v. *Kleinert*, 268 U. S. 646, 650 (1925).

Despite this long tradition, our more recent cases say it is "unsettled" whether the proper-presentation requirement is a jurisdictional bar or merely a prudential consideration. *E.g.*, *Bankers Life & Casualty Co.* v. *Crenshaw*, 486 U. S. 71, 79 (1988). But the Court has never explained why it abandoned a centuries-old limit on our jurisdiction. Two cases in the mid-20th century unsettled the doctrine with little justification. First, in *Terminiello* v. *Chicago*, 337 U. S. 1 (1949), the petitioner raised a First Amendment challenge to a city ordinance in state court, but failed to challenge the jury instruction interpreting that ordinance either below or in this Court. The Court sidestepped the proper-presentation requirement by reading the jury instruction as a "construction of the ordinance . . . as binding on us as though the precise words had been written into the ordinance." *Id.,* at 4. Later, in *Vachon* v. *New Hampshire*, 414 U. S. 478 (1974) (*per curiam*), the Court deviated yet further from the jurisdictional understanding of the proper-presentation rule. For the first time, and in an unreasoned footnote, the Court explicitly forgave a petitioner's failure to present a federal claim to the state court. See *id.,* at 479, n. 3. Other than *Terminiello*, the Court cited three cases that reviewed claims from *federal* court, see 414 U. S., at 483 (Rehnquist, J., dissenting), where the requirement to present a federal claim has never been jurisdictional, see, *e.g., Springfield* v. *Kibbe*, 480 U. S. 257, 259 (1987) (*per curiam*).

Since *Vachon*, the Court has not explained why the requirement to present a federal claim in state court is prudential rather than jurisdictional. Instead, we have repeatedly ducked the issue. See *Howell*, 543 U. S., at 445–446 (collecting cases). I see no reason to prolong this Court's ambivalence. The proper-presentation requirement appears in the only statute that grants this Court jurisdiction

to review state-court decisions. For most of our history, that requirement was unfailingly understood to be jurisdictional. And our cases have since departed from this principle without squaring that departure with §1257's unqualified text. Accordingly, I would hold that this Court lacks jurisdiction to hear a federal claim on review from a state court where a petitioner, like Hemphill, fails to properly present his claim to the court below.

## III

That the Court decides this case despite Hemphill's failure to present his claim to the New York Court of Appeals is not a mere academic defect. "Federal nullification of a state statute," or any state rule, "is a grave matter." *Maine* v. *Taylor*, 477 U. S. 131, 135 (1986); see also *Abbott* v. *Perez*, 585 U. S. \_\_\_, \_\_\_, n. 17 (2018) (slip op., at 21, n. 17) ("the inability to enforce its duly enacted plans clearly inflicts irreparable harm on the State"). And it is "unseemly in our dual system of government to disturb the finality of state judgments on a federal ground that the state court did not have occasion to consider." *Adams*, 520 U. S., at 90 (internal quotation marks omitted). Thus, it is "important that state courts be given the first opportunity to consider the applicability of state [rules]," particularly "in light of constitutional challenge, since the [rules] may be construed in a way which saves their constitutionality." *Cardinale*, 394 U. S., at 439. A state court's interest in deciding "whether to . . . amend [its] rules to avoid potential constitutional challenges" is "undeniable." *Adams*, 520 U. S., at 90.

Today, the Court disregards these important "[p]rinciples of comity." *Webb* v. *Webb*, 451 U. S. 493, 499 (1981). In the Court of Appeals, Hemphill argued that state law required "an affirmative attempt to *mislead* the jury . . . before the door can be opened to otherwise inadmissible evidence." App. 386. Hemphill maintained that "[t]he doctrine is not so capacious as to allow the admission of *any* evidence made

relevant by the opposing party's strategy." *Ibid.* (internal quotation marks omitted). But here, the Court describes *Reid* as permitting the prosecution to introduce all evidence that is "arguably relevant" to rebut the defendant's "theory of defense." *Ante,* at 2. The Court thus redefines *Reid* to be what Hemphill said it was not, and then holds that caricature of *Reid* unconstitutional without giving the Court of Appeals an opportunity to clarify its evidentiary rule in light of a concrete constitutional challenge. Even if *Massie*, *Reid*, and their progeny do not clearly define what it means to "mislead" a jury, any uncertainty is all the more reason for this Court to refrain from deciding this case prematurely. That the New York courts may clarify their doctrine in a later case does not forgive the Court's impetuosity here.

The Court's neglect of our settled jurisdictional principles is particularly unfortunate in this case. As Hemphill concedes, New York's Appellate Division does not appear to apply the door-opening doctrine consistently. See Reply Brief 10, n. 4. Some cases hold that *Massie* and *Reid* do not permit the prosecution to introduce evidence merely to "counte[r] the defendant's theory of the case." *People* v. *Richardson*, 95 App. Div. 3d 1039, 1040, 943 N. Y. S. 2d 599, 600 (2012). Others seem to apply the rule more aggressively. See *People* v. *Cole*, 59 App. Div. 3d 302, 302–303, 873 N. Y. S. 2d 603, 604 (2009). Either way, the Court today purports to resolve what is effectively an intramural disagreement within the New York judiciary in order to reach a novel constitutional claim. That task should—and under §1257's jurisdictional bar, *must*—be left to the New York Court of Appeals in the first instance.

\*   \*   \*

I would dismiss this case for lack of jurisdiction under 28 U. S. C. §1257 because Hemphill did not raise his federal claim to the New York Court of Appeals. I respectfully dissent.